No. 04-0083
(Judge Bruggink)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DOMINION RESOURCES, INC., and
DOMINION NUCLEAR CONNECTICUT, INC.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS AND DEFENSES BASED UPON THE "ONE-TIME FEE"

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

LISA L. DONAHUE
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

April 11, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**


BACKGROUND . . . . . 1

ARGUMENT . . . . . 5

I. STANDARD OF REVIEW . . . . . 5

II. DOMINION'S OBLIGATION TO PAY THE ONE-TIME FEE FOR MILLSTONE UNIT ONE IS A CONDITION PRECEDENT TO DOE'S DUTY THAT CANNOT BE EXCUSED . . . . . 6

A. Dominion's Obligation To Pay The One-Time Fee For Millstone Unit One Is A Condition Precedent To DOE's Performance, As A Matter Of Law . . . . . 6

B. Dominion's Election To Pursue A Partial Breach Of Contract Claim, Rather Than A Total Breach Claim, Means That, To Recover Partial Breach Damages, It Must Timely Perform Its Own Contract Duties . . . 10

C. To The Extent That Dominion Claims DOE To Be Obligated To Begin Accepting SNF Immediately, Dominion's One-Time Fee For Millstone Unit One Is Presently Due And Owing . . . . . 15

III. IN THE ALTERNATIVE, DEFENDANT IS LEGALLY ENTITLED TO CLAIM THE UNPAID ONE-TIME FEE, PLUS ACCRUED INTEREST, AS AN OFF-SET TO ANY PARTIAL BREACH DAMAGES AWARDED TO DOMINION . . . . . 19

A. Allowing Dominion To Retain The One-Time Fee For Millstone Unit One Or Millstone Unit Two Would Place Dominion In A Better Position Than If DOE Had Begun Accepting SNF In 1998 . . . . 19

B. Alabama Power Does Not Limit The Government's Ability To Claim An Offset . . . . . 24

C. Dominion Is Not Entitled To Receive And Retain A Windfall Due To DOE'S Delay . . . . . 26

CONCLUSION . . . . . 29

## TABLE OF AUTHORITIES

## CASES

Alabama Power,
307 F.3d at 1306 . . . . . . . . . . 24, 25

B-B Co. v. Piper Jaffray & Hopwood, Inc.,
931 F.2d 675 (10th Cir. 1991) . . . . . . . . . . 6

Barron Bancshares, Inc. v. United States,
53 Fed. Cl. 310 (2002), aff'd in relevant part,
366 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . 13

Bettis v. Islamic Republic of Iran,
315 F.3d 325 (D.C. Cir. 2003) . . . . . . . . . . 17

Bluebonnet Sav. Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . . . . . . 16, 19, 20, 22

Brazos Elec. Power Coop., Inc. v. United States,
49 Fed. Cl. 398 (2001) . . . . . . . . . . 6

Cecile Industries, Inc. v. Cheney,
995 F.2d 1052 (Fed. Cir. 1993) . . . . . . . . . . 21, 23

Charron v. United States,
200 F.3d 785 (1999) . . . . . . . . . . 8, 9

Cities Service Helix, Inc. v. United States,
211 Ct. Cl. 222,
543 F.2d 1306 (1976) . . . . . . . . . . 12, 13

City of Fairfax, Va. v. Washington Metro. Area Transit Auth.,
582 F.2d 1321 (4th Cir. 1978), cert. denied,
440 U.S. 914 (1979) . . . . . . . . . . 12

Columbia Gas System, Inc. v. United States,
50 F.3d 233 (3d Cir. 1995) . . . . . . . . . . 13

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . 5

Conley v. Pitney Bowes,
34 F.3d 714 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Consumers Energy Company v. United States,
65 Fed. Cl. 364 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 22

CW Government Travel Inc. v. U.S.,
63 Fed. Cl. 369 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

DPJ Co. v. FDIC,
30 F.3d 247 (1st Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Enron Corp. Secs., Derivatives & ERISA Litig.,
284 F. Supp. 511 (S.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

First Federal Savings & Loan Assoc. v. United States,
58 Fed. Cl. 139 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Gober,
100 F.3d 1195 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hamlet v. United States,
873 F.2d 1414 (Fed Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Hansen Bancorp, Inc. v. United States,
53 Fed. Cl. 92 (2002), vacated and remanded on other grounds,
367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Henke v. United States,
60 F.3d 795 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., No. 03-242,
2004 WL 2700019 (D. Del. Nov. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hughes Communications Galaxy, Inc. v. United States,
38 Fed. Cl. 578 (1997), aff'd,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Indiana Michigan Power Co. v. Department Of Energy,
88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Indiana Michigan Power Co. v. United States,
60 Fed. Cl. 639 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Int'l Audiotext Network, Inc. v. American Telegraph and Telephone Co.,
62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

LaSalle Talman Bank v. United States,
317 F.3d 1363 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26, 27

Landmark Land Co. v. United States,
256 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lash Corp. v. Fisher Hamilton Scientific, Inc.,
No. 94-CV-767H, 1996 WL 111582 (W.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 9

Loud v. Pomona Land & Water Co.,
153 U.S. 564 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lovink v. Guilford Mills, Inc.,
878 F.2d 584 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lunsford v. United States,
570 F.2d 221 (8th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Madden v. United States,
178 Ct. Cl. 121,
371 F.2d 469 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Massachusetts Bay Transp. Auth. v. United States,
129 F.3d 1226 (Fed. Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Moore v. Ford Motor Co.,
901 F. Supp. 1293 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

PVI, Inc. v. Ratiopharm,
253 F.3d 320 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pinewood Realty Ltd. P'ship v. United States,
223 Ct. Cl. 98,
617 F.2d 211 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Project Map, Inc. v. United States,
203 Ct. Cl. 52,
486 F.2d 1375 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

REW Enters., Inc. v. Premier Bank, N.A.,
49 F.3d 163 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Record Club of America, Inc. v. United Artists Records, Inc.,
890 F.2d 1264 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Roboserve, Inc. v. Kato Kagaku Co.,
78 F.3d 266 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

S&R Corp. v. Jiffy Lube Int'l, Inc.,
968 F.2d 371 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

San Carlos Irrigation & Drainage Dist. v. United States,
23 Cl. Ct. 276 (1991), aff'd,
111 F.3d 1557 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Scholle v. Cuban-Venezuelan Oil Voting Trust,
285 F.2d 318 (2d Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Sinclair Oil Corp. v. United States,
291 F.3d 822 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

Stansbury Law Firm, P.A. v. IRS,
221 F.3d 1059 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

System Fuels. Inc. v. United States,
65 Fed. Cl. 163 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

Three River Telco v. TSFL Holding Corp., Inc.,
300 F.3d 924 (8th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Munsey Trust Co.,
332 U.S. 234 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Vari-Build, Inc. v. City of Reno,
622 F. Supp. 97 (D. Nev. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Vermont Yankee Nuclear Power Corp. v. United States,
73 Fed. Cl. 236 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

White v. Delta Constr. Int'l, Inc.,
285 F.3d at 1040 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATUTES**

28 U.S.C. § 2514 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

31 U.S.C. § 3716 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. § 10222(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 10222(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23

42 U.S.C. §10222(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §10222(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10 C.F.R. § 961.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**MISCELLANEOUS**

8 C. McCauliff, Corbin on Contracts § 30.7, at 14 (rev. ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . 6

2 E. Farnsworth, Farnsworth on Contracts § 8.11 (3d ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

L. Simpson, Handbook of the Law of Contracts § 152 (1965) . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

13 R. Lord, Williston on Contracts § 38.8, at 405 (4th ed. 2000) . . . . . . . . . . . . . . . . . . . . . . . 13

Black's Law Dictionary 1275 (6th ed. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

17B C.J.S. Contracts § 716 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Restatement (Second) of Contracts § 237 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

Restatement (Second) of Judgments § 26 cmt. g, at 241 (1982) . . . . . . . . . . . . . . . . . . . . . . . 28

Restatement (Second) Contracts § 269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) Contracts § 243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DOMINION RESOURCES, INC., and<br>DOMINION NUCLEAR CONNECTICUT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 04-0083<br>(Judge Bruggink) |

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S
COUNTERCLAIMS AND DEFENSES BASED UPON THE "ONE-TIME FEE"

Defendant, the United States, respectfully submits this response to "Plaintiffs' Motion to Dismiss and/or Strike Defendant's Counterclaims and Defenses Based upon the One-Time Fee," filed January 29, 2007, by plaintiffs, Dominion Resources, Inc. and Dominion Nuclear Connecticut, Inc. (collectively "Dominion"). As explained in the Government's response, Dominion seeks to dismiss legally sound counterclaims and defenses that rest upon complicated factual scenarios which are best determined after the close of discovery. For this reason, the Government respectfully requests that the Court deny Dominion's motion and permit this case to proceed to discovery on the issue of the one-time fee.

BACKGROUND

Pursuant to the Standard Contract, each contract holder is required to pay continuing quarterly fees "in the amount of 1.0 mil per kilowatt-hour (1M/KWH) on electricity generated by Purchaser's nuclear power reactor(s)" and sold, designed to cover spent nuclear Fuel ("SNF") generated after April 7, 1983. 10 C.F.R. § 961.11, Art. VIII.A.1 & B.1; see 42 U.S.C. § 10222(a)(2) (establishing quarterly fees). In addition to those quarterly fees, each contract holder is responsible for paying a separate fee for the disposal of any SNF and/or HLW that it had

generated prior to April 7, 1983: "For SNF, or solidified high-level radioactive waste derived from SNF, which fuel was used to generate electricity in a civilian nuclear power prior to April 7, 1983, a one-time fee will be assessed." 10 C.F.R. § 961.11, Art. VIII.A.2 (emphasis added); see 42 U.S.C. § 10222(a)(3) (establishing the one-time fee). This fee for SNF generated prior to April 7, 1983 "shall not be subject to adjustment, and the payment thereof by the Purchaser shall be made to DOE as specified in paragraph B of this Article VIII." 10 C.F.R. § 961.11, Art. A.2. (emphasis added).

Paragraph B of Article VIII provides each contract holder with three options for the payment of the fee for the disposal of SNF generated prior to April 7, 1983, two of which are expressly tied to a Delivery Commitment Schedule ("DCS") approval process. Under the first option, Option 1, the contract holder agrees to pay its fee prorated evenly over 40 quarters, the last of which must be made prior to the date scheduled for DOE's first acceptance of that contract holder's SNF as identified in an approved DCS. 10 C.F.R. § 961.11, Art. VIII.B.2(a) (emphasis added). Pursuant to the second option, Option 2, the contract holder may elect to satisfy its financial obligation "in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . .," plus interest. Id., Art. VIII.B.2(b) (emphasis added). Pursuant to the third option, Option 3, the contract holder must pay his entire fee prior to June 30, 1985. Id., Art. VIII.B.2(c). The contract holder is obligated to elect the payment option for its fee relating to the disposal of its pre-April 7, 1983 SNF within two years after contract execution: "For SNF discharged prior to April 7, 1983, and for in-core burned fuel as of 12:00 A.M. April 7, 1983, the Purchaser shall, within two (2) years of contract

execution, select one of the following fee payment options: . . . ." Id., Art. VIII.B.2 (emphasis added).

Article V of the Standard Contract sets forth the procedures by which DOE and the contract holder would identify and arrange for the delivery of SNF. Pursuant to this provision, the contract holder would submit a DCS to DOE, identifying the SNF that it "wishes to deliver to DOE." Art. V.B.1. Within 60 days of receipt of this proposed DCS, DOE would approve or disapprove the DCS. Art. V.B.2. The final step in arranging for the deliver of SNF was the submission by the contract holder, and the approval by DOE, of a Final Delivery Schedule ("FDS"), "not less than twelve (12) months prior to the delivery date specified therein." Art. V.C.

Northeast Utilities Services Company ("Northeast Utilities"), Dominion's predecessor, executed the Standard Contracts that are at issue here on June 30, 1983. Compl. 1.[1] Subsequently, Northeast Utilities elected to pay its one-time fee with respect to Millstone Units One and Two, pursuant to Option 2. In 1993, 1994, and 1995, Northeast Utilities submitted four separate DCSs, seeking to obtain DOE's commitment to accept SNF from Millstone Unit One, beginning in 1998 and continuing in the years 1999, 2000, and 2001. In 1993, DOE approved the DCS that Northeast Utilities submitted in 1993, reflecting delivery of SNF from Millstone Unit One beginning in 1998. App. 1-2.[2] In 1996, 1998 and 1999, Northeast Utilities submitted additional DCSs, seeking DOE's commitment to accept SNF from Millstone Unit One in 2002,

---

1 "App. _" refers to the appendix to this opposition. "Compl. ¶ ___" refers to Dominion's Complaint this case, filed January 23, 2004. "Ans. ¶ ___" to the Government's Answer to Plaintiffs' Complaint, Affirmative Defenses and Counterclaims," filed on January 9, 2007.

2 DOE also approved DCS submitted by Northeast Utilities seeking DOE's commitment to accept SNF beginning in 1999 and continuing into 2000 and 2001.

2004, and 2005 and from Millstone Unit Two in 2002 and 2005. These additional DCSs were not approved by DOE. See e.g. App. 3-6. Upon acquiring Millstone Units One, Two, and Three in 2001, Dominion was assigned Northeast Utilities's rights and duties under the Standard Contract. Accordingly, Dominion was required to make the entire one-time fee payment at "anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule, and shall consist of the fee plus interest on the outstanding fee balance." 10 C.F.R. § 961.11, Art. VIII.B.2(b). In fact, when DOE distributed the published Acceptance Priority Ranking ("APR"), which, pursuant to the Standard Contract, was to be the basis for the allocation of waste acceptance capacity, it made clear that no FDS, specifying a definite date for SNF delivery, would be approved for Northeast Utilities until it paid its one-time fee. App. 8, 23. Accordingly, in compliance with Dominion's election pursuant to Article VIII.B.2(b), Dominion was required, if it wanted DOE to begin acceptance of its SNF at Millstone Unit One in 1998, to pay its one-time fee for its pre-April 7, 1983 SNF under its contract prior to the 1998 acceptance. In any event, even though Dominion did not possess an approved DCS for Millstone Unit Two, Dominion would have been required to pay the entirety of its one-time fee for Millstone Unit Two before DOE began acceptance of any SNF and/HLW for that unit. See 10 C.F.R. § 961.11, Art. VIII.B.2. In fact, section 302(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10222(a)(5), expressly indicates that DOE's obligation to dispose of any utility's SNF is "in return for the payment of fees established by this section," conditioning DOE's acceptance obligation upon that payment. To the present day, Dominion has not paid its one-time fee for either Millstone Unit One or Millstone Unit Two.

## ARGUMENT

### I. STANDARD OF REVIEW

When deciding a motion to dismiss, this Court must assume that all undisputed facts alleged in the counterclaim are true and must draw all reasonable inferences in favor of the non-moving party. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed Cir. 1989).[3] Thus, the Government's counterclaims and defenses should not be dismissed "unless it appears beyond doubt that the [Government] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Conley, 355 U.S. at 45-46. Although the Court retains broad discretion in a motion to strike, "striking a party's pleading is an extreme measure, and, as a result, [Federal courts have held] that 'motions to strike . . . are viewed with disfavor and are infrequently granted.'" Stansbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977).

---

[3] As Dominion noted in its motion, documents that are "integral" materials referenced in the Government's answer and counterclaims, and upon which the Counterclaim "relies heavily," can be considered in a motion to dismiss without converting such motion to a motion for summary judgment. Int'l Audiotext Network, Inc. v. American Telegraph and Telephone Co., 62 F.3d 69, 72 (2d Cir. 1995); Plf.'s Br. 2 n. 1. Here, the Government appends DOE-approved DCSs and information distributed to Dominion concerning the published 1992 Acceptance Priority Ranking. Such documents are expressly referenced in Dominion's complaint and motion to dismiss, the Government's counterclaim, and the Standard Contract.

## II. DOMINION'S OBLIGATION TO PAY THE ONE-TIME FEE FOR MILLSTONE UNIT ONE IS A CONDITION PRECEDENT TO DOE'S DUTY THAT CANNOT BE EXCUSED

### A. Dominion's Obligation To Pay The One-Time Fee For Millstone Unit One Is A Condition Precedent To DOE's Performance, As A Matter Of Law

The unmistakable contractual language of Article VIII.B.2(b) creates a condition precedent, making DOE's duty to accept Dominion's SNF conditional upon Dominion's prior payment of its one-time fee. Conditions precedent "are those *facts and events*, occurring *after the making of a valid contract*, that must exist or occur before there is a right to immediate performance, before there is a breach of a contract duty and before the usual judicial remedies become available." 8 C. McCauliff, Corbin on Contracts § 30.7, at 14 (rev. ed. 1999) (italics in original); see Brazos Elec. Power Coop., Inc. v. United States, 49 Fed. Cl. 398, 405 (2001); B-B Co. v. Piper Jaffray & Hopwood, Inc., 931 F.2d 675, 678 (10th Cir. 1991). A fact or event becomes a condition of a duty "by agreement of the parties, expressed in definite language when the contract is made" as an "express" condition. 8 C. McCauliff, supra, § 30.10, at 19. However, "contractors can 'express' their intentions otherwise than by the use of specific words." Id. Indeed, "[a] fact or event may be made a condition of a contract right and duty by any form of words capable of interpretation." Id. § 31.1, at 41 (emphasis added). Further, "[j]ust as parties can make promises without using words to do so, they can also express an intention that a fact or event shall be a condition of legal duty without putting it into words." Id. § 30.10, at 19.[4]

[4] "If a condition is found by the processes of interpretation of language, it is called an express condition; if otherwise, the condition" may be a "constructive" condition or an "implied" condition. Id. § 31.1, at 49. "In specific cases it is not always possible to classify the condition involved in the case as being an express condition or a constructive one." Id. § 31.1, at 48.

Here, the language of the Standard Contract is quite clear. DOE is to begin acceptance of SNF from an individual contract holder at some point after January 31, 1998, as identified in an approved DCS. 10 C.F.R. § 961.11, Art. VI.B.1(b) ("DOE will first accept from Purchaser the oldest SNF and/or HLW for disposal in the DOE facility, except as otherwise provided for in paragraphs B [the DCS provision], D and E of Article V"). However, Article VIII.B.2(b) expressly provides that, before DOE accepts any SNF from the contract holder under an approved DCS, the contract holder "shall" pay its one-time fee. Id., Art. VIII.B.2(b). In establishing conditions to the duty of subsequent performance, "[s]ometimes the parties themselves fix the order of performance by the language of their agreement." 2 E. Farnsworth, Farnsworth on Contracts § 8.11 (3d ed. 2004). In this case, the language of the agreement explicitly places upon the contract holder the obligation (or condition) to pay its one-time fee before DOE's duty to begin SNF acceptance arises, creating an express condition under the specific language of the Standard Contract.

Even if the language of the Standard Contract itself did not create an express condition, the contractual requirement that the contract holder pay its one-time fee before DOE began SNF acceptance clearly was intended to condition DOE's obligation to accept and dispose of SNF upon the contract holder's prior payment of its fees, creating a "constructive" condition. "One well-established rule of contract construction is that '[i]n bilateral contracts for an agreed exchange of performances, . . . where one party's performance is to be rendered prior in time to that of the other, it is a constructive condition precedent to the latter's duty.'" Conley v. Pitney Bowes, 34 F.3d 714, 717 (8th Cir. 1994) (quoting L. Simpson, Handbook of the Law of Contracts § 152 (1965)); see Restatement (Second) of Contracts § 237 (1981) ("it is a condition of each

party's remaining duties to render performances to be exchanged under an exchange of promises that there be no material failure by the other party to render any such performance due at an earlier time"). "Such a 'performance is as much a condition precedent to the other's duty as though expressly made so.'" Conley, 34 F.3d at 714 (quoting L. Simpson, supra, § 152, and citing Loud v. Pomona Land & Water Co., 153 U.S. 564, 577 (1894) (agreement to convey land "after the making of the payment and full performance" rendered such payment and performance a condition precedent to the duty to convey)). Whether viewed as an express or a constructive condition, payment of the one-time fee is, under traditional contract interpretation principles, a condition precedent to DOE's obligation to begin accepting Dominion's SNF. Because Dominion has not satisfied that condition, DOE's duty to begin accepting Dominion's SNF has not arisen yet, and Dominion cannot maintain a suit for damages for DOE's failure to begin that acceptance. Landmark Land Co. v. United States, 256 F.3d 1365, 1376 (Fed. Cir. 2001) ("if a contractual duty is subject to a condition precedent, that condition must be satisfied before the duty arises.") (emphasis in original).

Dominion's contention that its one-time fee obligation is a separately enforceable contractual promise, and not a condition precedent should fail. First, despite Dominion's reliance on Charron v. United States, 200 F.3d 785 (1999), Charron does not support its contention that Dominion's obligation to pay the one-time fee is not a condition precedent.[5] In Charron, the court determined that a provision in the National Hockey League Standard Player Contract that requires a player to report to training camp "in good physical condition," was a contractual condition of

[5] The Charron decision addresses the unique circumstances under which Canadian citizens, who were professional hockey players, sought to exclude from their taxable income amounts earned for services performed outside of the United States. Charron, 200 F.3d 785.

employment, rather than a promise to perform services. Charron, 200 F.3d at 790-791. In making this determination, the Court noted that because the employment contract simply indicated that the players were to maintain fitness, without specifying the means by which they were to maintain fitness, the fitness clause of the contract was a "limiting or modifying factor" that described the conditions of the players' employment and not a promise to maintain any specific level of fitness in any particular way. Id. at 790-791. In other words, the language of the contract determined that the fitness requirement was a condition of employment. Likewise, the express language of the pre-payment obligation in Article VIII.B.2(b) of the Standard Contract makes clear that it is a modifying factor, describing the conditions of the DOE's acceptance of Dominion's SNF, and not constituting merely a promise to pay DOE at some point in the future. As established earlier in this section, whether a contractual provision is a condition precedent is dependant upon the intent of the parties, which can be determined by the plain language of the contract. See e.g., Three River Telco v. TSFL Holding Corp., Inc., 300 F.3d 924, 927 (8th Cir. 2002) ("Whether contractual language is deemed conditional or promissory generally depends upon the intention of the parties."). However, to the extent that the Court determines that the language of the Standard Contract is sufficiently ambiguous to determine whether the parties intended for the payment of the one-time fee to be a condition precedent or a separately enforceable promise, this issue is not appropriate for disposition on a motion to dismiss. See e.g., CW Government Travel Inc., 63 Fed. Cl. 369, 390 (2004) (where the interpretations of the both parties can be supported by the language of a contract, summary judgment must be denied); Lash Corp. V. Fisher Hamilton Scientific, Inc., No. 94-CV-767H, 1996 WL 111582, at * 2 (W.D.N.Y. 1996).

Second, Dominion's citation to the interest penalty provisions that provide for the accrual of interest at the low interest rates specified in the Standard Contract is not persuasive. Pl. Opp. 12 (citing Art. VIII.C) [6] While the Government agrees that the contract contains a provision allowing for the accrual of interest upon late payments, the Standard Contract also contains a "Remedies" provision, which expressly provides that "[n]othing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." 10 C.F.R. § 961.11, Art. XI. Dominion's assertion that DOE's remedy for a contract holder's non-payment of its one-time fee is through the continuing accrual of interest both renders it impossible to determine when, if ever, a contract holder would be obligated to pay its fees and, further, deletes the prior payment obligation from the Standard Contract. The interest provision upon which Dominion relies does not somehow eliminate the condition that the Standard Contract places upon DOE's duty to begin accepting an individual contract holder's SNF.

B. Dominion's Election To Pursue A Partial Breach Of Contract Claim, Rather Than A Total Breach Claim, Means That, To Recover Partial Breach Damages, It Must Timely Perform Its Own Contract Duties

Dominion's decision to pursue a claim for only a partial breach of contract, and not for a total breach of contract, eliminates its ability to defer its own performance obligations. "When

[6] Pursuant to Article VIII.B.2(b) of the Standard Contract, interest accrues on the one-time fee "from April 7, 1983, to the date of the payment based upon the 13-week Treasury bill rate, as reported on the first such issuance following April 7, 1983, and compounded quarterly thereafter by the 13-week Treasury bill rates as reported on the first such issuance of each succeeding assigned three-month period until payment." 10 C.F.R. § 961.11, Art. VIII.B.2(b). "DOE will notify the Purchaser of amounts due only when unpaid or underpaid by the dates specified in paragraph b . . .," at which the interest rate increases. Id. Art. VIII.C. Because Dominion is obligated to pay its one-time fee only prior to the date upon which it wants DOE to begin accepting its SNF, its election to defer its one-time fee payment does not make that payment late, but merely defers DOE's duty to begin SNF acceptance.

one party to a contract materially breaches his duties under the contract, the other party may proceed in one of two ways." S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992). "He can either consider the contract terminated and sue for total breach, or he can continue his performance and sue for partial breach." Id. That is, a claim for partial breach is one for damages based upon "only part of the injured party's remaining rights to performance," while a claim for damages for total breach is "one for damages based on all of the injured party's remaining rights to performance." San Carlos Irrigation & Drainage Dist. v. United States, 23 Cl. Ct. 276, 279 (1991) (citations omitted), aff'd, 111 F.3d 1557 (Fed. Cir. 1997). Consequently, the damages recoverable for a partial breach of contract are necessarily less than those recoverable for a total breach. See Roboserve, Inc. v. Kato Kagaku Co., 78 F.3d 266, 279 (7th Cir. 1996) (concluding that the jury's determination that damages for partial breach of contract exceeded those for total breach was "obviously irrational"). In awarding damages for breach of contract, a fact-finder therefore has to "differentiate between a total or material breach on the one hand and a partial breach on the other, and to measure damages, if any, according to the nature of the breach." Lovink v. Guilford Mills, Inc., 878 F.2d 584, 587 (2d Cir. 1989).

Aside from the different measure of damages applicable to a partial and total breach, these claims can also be distinguished based upon the remedies that they provide to an injured party. Indeed, a plaintiff's decision to continue a contract after a material breach and initiate an action for damages for partial breach is not "without consequences." PVI, Inc. v. Ratiopharm, 253 F.3d 320, 325 (8th Cir. 2001). A "total breach justifies termination of the contract and damages for complete failure of performance," but a "partial breach does not." Lovink, 878 F.2d at 587; see Pinewood Realty Ltd. P'ship v. United States, 223 Ct. Cl. 98, 104, 617 F.2d 211, 215 (1980) ("[i]f

the injured party ignores the breach, and continues to perform, it has waived its right to terminate the contract, and has only retained its claim for damages for partial breach"); Hansen Bancorp, Inc. v. United States, 53 Fed. Cl. 92, 100 (2002) ("[a] breach by non-performance gives rise to a claim for damages for total breach only if it discharges the injured party's remaining duties to render such performance"), vacated and remanded on other grounds, 367 F.3d 1297 (Fed. Cir. 2004).

In its motion to dismiss, Dominion complains that, because DOE announced prior to January 31, 1998, that it would not be able to begin SNF acceptance by that date, DOE excused the condition precedent when it failed to begin accepting SNF from the nuclear utility contract holders on January 31, 1998. Pl. Br.. 13-14. In essence, Dominion claims that DOE anticipatorily breached the Standard Contract and that Dominion was, therefore, not required to satisfy any of its condition precedents to DOE's further duty to perform. However, no legal theory of an "anticipatory partial breach" exists. See City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) ("an anticipatory breach cannot be predicated on a partial breach of the contract . . ." (emphasis added)), cert. denied, 440 U.S. 914 (1979); see Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 648 (2004) (finding in SNF case that "[a]nticipatory repudiation does not apply in a partial breach situation"), appeal pending, No. 04-5122 (Fed. Cir.). As the Court held in Cities Service Helix, Inc. v. United States, 543 F.2d 1306 (1976), a contractor must make an affirmative election in response to an anticipatory breach, either to view the contract as concluded or to continue contract performance:

> A material breach does not automatically and *ipso facto* end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it. If he decides to close the contract and so

> conducts himself, both parties are relieved of their further obligations and the injured party is entitled to damages to the end of the contract term (to put him in the position he would have occupied if the contract had been completed). If he elects instead to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach.

Id. at 1313; accord Barron Bancshares, Inc. v. United States, 53 Fed. Cl. 310, 323 (2002), aff'd in relevant part, 366 F.3d 1360 (Fed. Cir. 2004); S&R Corp., 968 F.2d 371, 376 (3d Cir. 1992). Further, even when the actual performance date arrives and is not satisfied, the non-breaching party, to the extent that it elects to view the breach as only partial, must continue to perform its continuing contractual obligations and seek damages for the delay in performance. Cities Serv. Helex, Inc., 211 Ct. Cl. at 234.

Here, Dominion elected to treat the Standard Contract as continuing, not to declare it at an end, and to pursue only a partial breach of contract claim in this Court. Thus, DOE's duty to accept Dominion's SNF has not yet arisen because Dominion, which was obligated to continue its own contract performance, has never satisfied its condition precedent to DOE's duty: payment of its one-time fee. The non-occurrence of this condition "excuses performance by the party whose performance is conditioned . . . ." 13 R. Lord, Williston on Contracts § 38.8, at 405 (4th ed. 2000); see Columbia Gas System, Inc. v. United States, 50 F.3d 233, 240 (3d Cir. 1995).

In its motion, Dominion relies, in part, upon this Court's decision in System Fuels, Inc. v. United States, 65 Fed. Cl. 163 (2005), in which the Court found that the obligation to pay the one-time fee is a condition precedent, but that the condition was excused in System Fuels' situation "based upon temporary frustration of purpose caused by the [G]overnment's suspension of the DCS process." The Court's decision in System Fuels is legally problematic for two reasons.

First, the decision in System Fuels was issued before the Federal Circuit announced its decision in Indiana Michigan, which held, in part, that plaintiffs in the SNF cases cannot rely upon anticipatory repudiation theories in pursuit of their partial breach theories. Indiana Michigan, 422 F.3d 1369, 1374 (Fed. Cir. 2005). Second, in making its finding, the System Fuels Court relies upon Restatement (Second) Contracts § 269 regarding when impracticability of performance or frustration of purpose can suspend an obligor's performance. However, as the comment to this section makes clear, this provision "applies only to the duty of the party adversely affected by the impracticability or frustration; the effect on the duty of the other party, as to a performance to be exchanged under an exchange of promises, is governed by §§ 267, 268, 237 and 238." Restatement (Second) Contracts § 269, cmt. Better guidance regarding the conditions precedent in claims for partial breach of contract is provided by section 243, which states:

> If, in spite of the breach, he wishes to await performance by the party in breach and to have merely a claim for damages for partial breach rather than for total breach, he can excuse the non-occurrence of the condition of his remaining duties (§ 237) by promising to perform them in spite of its non-occurrence. His remaining duties are then not discharged, and the rule stated in Subsection (1) does not apply.

Restatement (Second) Contracts § 243, cmt. a.

Dominion has chosen to await performance by DOE and claim damages for partial, rather than total, breach. Having done so, Dominion was obligated to fulfill its obligation to pay its one-time fee for Millstone Unit One in 1998.

C. To The Extent That Dominion Claims DOE To Be Obligated To Begin Accepting SNF Immediately, Dominion's One-Time Fee For Millstone Unit One Is Presently Due And Owing

Dominion's contention that DOE is obligated immediately to accept its SNF but that, at the same time, the one-time fee is not yet due with respect to Millstone Unit One, contradicts the plan language of the Nuclear Waste Policy Act and the Standard Contract. The Nuclear Waste Policy Act ("NWPA") expressly provides that DOE's obligation to accept any SNF or HLW from a nuclear utility is "[i]n return for the payment of fees" required by the NWPA. 42 U.S.C. § 10222(a)(5)(B); see Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1276 (D.C. Cir. 1996) (DOE's duty to accept SNF "is conditioned on the payment of fees by the owner"). The plain language of the Standard Contract specifies that the method of payment of the one-time fee which Dominion selected requires that Dominion's "financial obligation shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . .," plus interest. 10 C.F.R. § 961.11, Art. VIII.B.2(b) (emphasis added). In 1993, DOE approved a delivery commitment schedule ("DCS") submitted by Dominion's predecessor, Northeast Utilities, reflecting that the first delivery of Dominion's SNF from Millstone Unit One was to take place in 1998. App. 1-2. Accordingly, to the extent that Dominion is arguing here that DOE was obligated to begin accepting its SNF in 1998, Dominion was first obligated under the terms of the Standard Contract to pay its one-time fee with respect to Millstone Unit One before 1998, the point in time at which DOE's obligation to accept Dominion's SNF arose.[7]

---

[7] Although the Government concedes that Dominion did not have an approved DCS for Millstone Unit Two, the Government asserts that it is entitled to receive an offset in the amount of the one-time fee if Dominion is awarded any damages with respect to Millstone Unit

Dominion's contention that the suspension of the DCS process does not allow DOE to claim that the one-time fee was due in 1998 is unavailing. Pl. Br. at 10-11. The suspension of the DCS process did not eliminate the valid, approved DCS that Northeast Utilities submitted in 1993, committing DOE to accept a specific quantity of fuel in 1998. This DCS, absent Dominion's failure to pay its one-time fee, would provide the basis for DOE's liability for its delay in accepting the amount of SNF set forth in this DCS. Because Dominion asks the Court to enforce this commitment to perform through the payment of damages, the Court should also enforce Dominion's obligation to pay its one-time fee as required by the commitment that this approved DCS embodies.

Dominion asks the Court to interpret the obligation of Article VIII.B.2(b) as tied to the first actual delivery of SNF under the Contract. Pl. Br.10. Dominion's position is fatally flawed, because it seeks to alter the terms of the contract between the parties in contravention of the plain language of Article VII.B.2(b). Specifically, Dominion asserts that the payment of the one-time fee is tied to the actual delivery of SNF pursuant to the contract and, since no delivery by Dominion or any other utility has occurred, the fee is currently not due. Pl. Br. 10. In essence, Dominion is arguing that, even though Article VIII.B.2(b) expressly requires that the contract holder "shall" pay its one-time fee before the date "reflected in" the earliest-approved DCS, the

---

Two. See supra 19-23. Northeast Utilities clearly intended for SNF to be delivered to DOE from Millstone Unit Two beginning in 2002, as reflected in the DCSs submitted to DOE, and such delivery was contingent upon receiving payment of the one-time fee. If the Court is to award damages to Dominion for Millstone Unit Two, then any damage award must account for payment of the one-time fee. Bluebonnet Savings Bank v. United States, 339 F.3d 1341, 1345 (Fed. Cir. 2003) ("To derive the proper amount for the damages award, the costs resulting from the breach must be reduced by the costs, if any, that the plaintiffs would have experienced absent a breach."); see supra 19.

language of Article VIII.B.2(b) actually means that the one-time fee is due after DOE actually accepts Dominion's SNF. Clearly, the phrase "as reflected in" means "as identified in" or "as established by." See, e.g., Bettis v. Islamic Republic of Iran, 315 F.3d 325, 337 (D.C. Cir. 2003) ("[t]here is a commonly understood meaning of the term, as reflected in State and common law" (emphasis added)); Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 347 F. Supp.2d 81, 102 (D. Del. 2004) ("proposed constructions are consistent with the ordinary meaning of those terms as reflected in common usage dictionaries . . ." (emphasis added)); In re Enron Corp. Secs., Derivatives & ERISA Litig., 284 F. Supp. 511, 625 (S.D. Tex. 2003) ("express preemption occurs by express statutory term, as reflected in § 514(a) of ERISA" (emphasis added)). Here, Dominion has an approved DCS for delivery in 1998; thus, it was required to pay its one-time fee prior to 1998, the date "reflected in" its earliest-approved DCS. By ignoring the phrase "as reflected in the DOE approved delivery commitment schedule" in Article VIII.B.2(b), Dominion's interpretation renders that phrase meaningless in contravention of traditional rules of contract interpretation. See CW Government Travel Inc. v. U.S., 63 Fed. Cl. at 390 ("When interpreting contractual language, the Court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless."). Moreover, to the extent that the Court finds Article VIII.B.2(b) is "reasonably susceptible to more than one interpretation," a decision as to its meaning cannot be made on a motion to dismiss. Id.

Dominion relies on decisions in this Court to support its contention that the one-time fee is not due until real world "first delivery" of spent nuclear fuel is imminent. Pl. Br. at 9. Yet, here, Dominion is seeking damages based upon the actions that were to have occurred in the "but for" world. The two earliest decisions with respect to this issue, and upon which the other decisions

cited by Dominion rely, are Consumers Energy Company v. United States, 65 Fed. Cl. 364 (2005), and System Fuels. Inc. v. United States, 65 Fed. Cl. 163 (2005). With all due respect, these decisions are contrary to the plain language of the Standard Contract and should not be followed.

The Court in Consumers found that plaintiff's obligation to pay the one-time fee had not arisen because the approved DCS in that case, just as in this case, specified only a delivery year. The Court found that the plaintiff's one-time fee was not due, because there was no delivery date specified in the DCS and the process of submitting FDS, which would have provided a specific delivery date, was suspended before a date was established. Similarly, in System Fuels, Inc. v. United States, 65 Fed. Cl. 163 (2005), the Court found that the one-time fee was not presently due, in part, because "the government suspended the DCS process before System Fuels could submit an FDS." System Fuels, 65 Fed. Cl. at 174.[8] However, in these analyses, the Court reads more into the provisions of the Standard Contract than exist. The relevant provision only requires that the one-time fee would be paid "prior to the first delivery, as reflected in the DOE approved delivery commitment schedule." 10 C.F.R. § 961.11, Art. VIII.B.2(b)(emphasis added). With the publication of the 1991 APR, DOE warned contract holders which had not paid their one-time fee that "approval of Final Delivery Schedules and acceptance of SNF by the Department will be contingent upon full payment of the one-time fee obligation." App. 8. It is true that a specific delivery date would have been established with the submission and approval of an FDS, but the

---

[8] In System Fuels, the Court found that the one-time fee obligation was a mandatory condition to performance, but that the obligation had been excused based upon a "temporary frustration of purposes caused by the government's suspension of the DCS process." Id. at 173. Where, as here, a plaintiff sues for a partial breach, its performance obligations cannot be excused. See supra 14-18.

obligation to pay the one-time fee is expressly tied to the approved DCS, not the FDS. 10 C.F.R. § 961.11, Art. VIII.B.2(b). The Court, by reading into the contract a requirement to establish a specific delivery date prior to the obligation to pay the one-time fee, has altered the terms of the contract between the parties.

## III. IN THE ALTERNATIVE, DEFENDANT IS LEGALLY ENTITLED TO RECOUP THE UNPAID ONE-TIME FEE, PLUS ACCRUED INTEREST, FOR MILLSTONE UNIT ONE AND MILLSTONE UNIT TWO FROM ANY PARTIAL BREACH DAMAGES AWARDED TO DOMINION

### A. Allowing Dominion To Retain The One-Time Fee For Millstone Unit One Or Millstone Unit Two Would Place Dominion In A Better Position Than If DOE Had Begun Accepting SNF In 1998

"One of the basic principles of contract damages is that 'damages for breach of contract shall place the wronged party in as good a position as it would have been in, had the breaching party fully performed its obligation.'" Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003) (quoting Massachusetts Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir.1997)). "Thus, the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach." Id. (citing White v. Delta Constr. Int'l, Inc., 285 F.3d 1040, 1043 (Fed. Cir. 2002)). "[T]he non-breaching party 'should on no account get more than would have accrued if the contract had been performed.'" White, 285 F.3d at 1043 (quoting DPJ Co. v. FDIC, 30 F.3d 247, 250 (1st Cir.1994)).

Regardless of the actual deadline for payment of the one-time fee, before DOE ever began accepting Dominion's SNF, Dominion would have been required to have paid its one-time fee pursuant to Article VIII.B.2(b) of the Standard Contract. The amount of that fee for Millstone Unit One was originally $ 48,385,480, but with interest calculated in accordance with the terms of

Article VIII(B)(2), now exceeds approximately $163 million. App. 26. The amount of that fee for Millstone Unit Two was originally $33,722,126, but with interest calculated in accordance with the terms of Article VIII(B)(2), now exceeds approximately $114 million. App. 29. Had DOE begun accepting Dominion's SNF in 1998 at Millstone Unit 1 and in 2002 at Millstone Unit 2, in accordance with Dominion's submitted DCSs, Dominion first would have had to pay the entirety of its one-time fee for both units. Because Dominion now seeks damages for DOE's failure to begin accepting its SNF and seeks to be placed in the financial position in which it would have been had DOE timely begun SNF acceptance, DOE should be entitled to recover the amount of Dominion's unpaid one-time fee (plus the interest calculated from April 7, 1983, as identified in Article VIII.B.2(b) of the Standard Contract) before the Court requires DOE to pay any damages for DOE's delay in performance. If the Court were to require DOE to pay damages for failing to begin acceptance of Dominion's SNF, but failed to allow DOE to recover the monies that it would have received had it timely begun SNF acceptance, the Court would place Dominion in a better position than it would have been had there been no breach. See Bluebonnet Savings Bank, 339 F.3d at 1345.

The Supreme Court and the Federal Circuit have long recognized the Government's common-law right to offset or recoup debts owed to the Government against contract payments and damages due to the debtor. The right of offset was first recognized by the Supreme Court in United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947), in which the Court held that the "government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." Consistent with the Supreme Court's decision in Munsey Trust, the Court of Claims similarly recognized the

Government's right of offset in Madden v. United States, 178 Ct. Cl. 121, 371 F.2d 469, 473 (1967), in which the Court held that the Government's right to offset debts owed to it against damages awarded to the debtor for an equitable adjustment of contract was superior to an attorney's lien.

Since the invocation of the common law doctrine of offset in Munsey Trust and Madden, the Government's right to offset or recoup contractual debts owed to it has been sustained in numerous decisions. See, e.g., First Federal Savings & Loan Assoc. v. United States, 58 Fed. Cl. 139, 165 (2003) (Government's right to offset damages can be raised as a "defense or argument in mitigation" during the damages phase of proceedings); Cecile Industries, Inc. v. Cheney, 995 F.2d 1052, 1054 (Fed. Cir. 1993) (Debt Collection Act of 1982, 31 U.S.C. § 3716, does not abrogate or constrict "the Government's long-standing common law right to offset contract debts against contract payments"); Project Map, Inc. v. United States, 203 Ct. Cl. 52, 486 F.2d 1375, 1376 (1973) (Government could withhold amounts owed to a contractor under a contract when the contracting officer had found that plaintiff was overpaid on two other contracts, even though the determination of overpayment was on appeal before the Board of Contract Appeals); Sinclair Oil Corp. v. United States, 291 F.3d 822, 828 (Fed. Cir. 2002) (proceeds received by a purchaser of gasoline from its settlement with a refiner would offset the gasoline purchaser's asserted refund from a DOE fund).[9]

---

[9] Offsets are permissible whether the Government is seeking to recoup or to setoff contractor debts. "Recoupment" is "a demand asserted [by a defendant] to diminish or extinguish the plaintiff's demand that arises out of the same transaction forming the basis of the plaintiff's claim," while a "setoff" "arises out of a transaction extrinsic to the plaintiff's claim." In re Gober, 100 F.3d 1195, 1207 (5th Cir. 1996) (emphasis added); see REW Enters., Inc. v. Premier Bank, N.A., 49 F.3d 163, 170 (5th Cir. 1995) (recoupment involves recovery of "part of a claim upon which one is sued" by means of a "counterclaim arising out of the same

The Government's common-law right to offset contractual debts owed to the Government against contract payments due to the debtor (and damages awarded to a plaintiff) is consistent with the contractual principle that damages for breach of contract cannot place the plaintiff in a better position than it would have been had there been no breach. The offset doctrine thus mandates that damages for breach of contract be reduced by the amount of contractual debts owed by a plaintiff to the Government to prevent unjust enrichment. "To derive the proper amount for the damages award, the costs resulting from the breach must be reduced by the costs, if any, that the plaintiffs would have experienced absent a breach." Bluebonnet, 339 F.3d at 1345 (emphasis added). Accord LaSalle Talman Bank v. United States, 317 F.3d 1363, 1366 (Fed. Cir. 2003) ("damages due to the breach are subject to offset or mitigation by the benefits of the actions taken after the breach").

In another SNF case in which the one-time fee had not been paid, Consumers Energy, although the Court rejected the Government's showing that the obligation to pay the one-time fee was a condition of performance that discharged the Government's liability, the Court granted the Government's request that it be allowed to offset plaintiff's one-time fee against any damages that may be awarded. Consumers Energy, 65 Fed. Cl. at 373. The Court reasoned that "[p]laintiff's recovery of damages without having to account for its obligation to pay the one-time fee, which it

transaction"); Vari-Build, Inc. v. City of Reno, 622 F. Supp. 97, 99 (D. Nev. 1985) ("claim in recoupment must concern matters arising out of the same transaction that is the basis for the plaintiff's claim for relief"); Black's Law Dictionary 1275 (6th ed. 1990) ("[r]ecoupment is a purely defensive matter growing out of transaction constituting plaintiff's cause of action and is available only to reduce or satisfy plaintiff's claim . . .").

would have owed had there been no breach, would surely put Plaintiff in a more advantageous position." Id.[10]

We acknowledge that, in its decision in Vermont Yankee Nuclear Power Corp. v. United States, 73 Fed. Cl. 236 (2006), the Court is in conflict with Consumers. The Vermont Yankee decision held that the Government was not entitled to recover the one-time fee through a setoff of damages, because the fee was not yet due. However, the Vermont Yankee Court confused the legal significance of the factual circumstances as they *actually* occurred with that of the factual circumstances as they *would have* occurred, had the DOE begun acceptance of SNF in 1998. It does not matter, for the purposes of determining damages whether, in the actual world, Dominion's one-time fee payment is currently due. Dominion's claim is based upon the premise that DOE was obligated to begin SNF acceptance from the contract holders, including Dominion, by January 31, 1998. Compl. ¶ 17. In the non-breach world, before DOE would have had any duty to accept Dominion's SNF, Dominion would first have to have paid its one-time fee. See, e.g., 42 U.S.C. § 10222(a)(5)(B). Thus, it is impossible to place Dominion in the financial position in which it would have been through an award of damages without accounting for that payment. In this case, to the extent that the Court awards any damages to Dominion, Dominion's damages should be reduced by the amount of its unpaid one-time fee (plus interest calculated in accordance with Article VIII.B.2(b)) pursuant to the Government's common-law right of offset. See Munsey Trust Co., 332 U.S. at 239; Cecile Indus., 995 F.2d at 1054-55; Sinclair Oil, 291 F.3d at 828. Moreover, it is unlikely that DOE will have any ability to recover damages that it

---

[10] The Court in System Fuels properly deferred consideration of the Government's request for an offset until the damages phase of the case, System Fuels, 65 Fed. Cl. 174 n.12.

previously paid in response to a court judgment if, in the future, Dominion does not subsequently satisfy its obligation to pay the fee. Quite simply, the Standard Contract itself establishes the order of performances: payment of the one-time fee by the contract holder first, followed by SNF acceptance by DOE.

B. *Alabama Power* Does Not Limit The Government's Ability To Claim An Offset

Contrary to Dominion's contention, granting the Government the right to offset Dominion's one-time fee obligation against any damages award would not violate the prohibition set forth in Alabama Power that funds from the Nuclear Waste Fund ("NWF") may not be used to pay the interim storage costs currently being borne by utilities. The NWF is the Treasury account created by the NWPA into which the nuclear utilities pay fees, and from which Congress appropriates monies to the Department of Energy for siting, developing, and operating a permanent nuclear waste repository. 42 U.S.C. § 10222(c). In the settlement with Pennsylvania Electric Company ("PECO")[11] that led to the Alabama Power challenge, DOE was to allow PEPCO to demonstrate the amount that it had expended for interim storage activities and then to deduct those amounts from its quarterly fee submissions under the Standard Contract. Alabama Power, 307 F.3d at 1306. The United States Court of Appeals for the Eleventh Circuit found that, pursuant to the current language of the NWPA, DOE may not use the NWF to pay for utilities' on-site storage resulting from DOE's delay in beginning SNF acceptance or to allow utilities to reduce their payments into the NWF to compensate themselves for that delay. Id. at 1312.

---

[11] PEPCO was subsequently acquired by Exelon Generation Company, LLC, and Exelon was an intervenor in Alabama Power.

Because the NWF is unavailable to pay these damages, delay costs to other plaintiffs have been paid from the Judgment Fund. 28 U.S.C. § 2514.

Based upon Alabama Power, Dominion incorrectly believes that, if we were to offset the recovery for DOE's delay by the amount of its one-time fee, Dominion will not actually pay its fee into the NWF, in violation of Alabama Power. Pl. Br. 16-18. Dominion's mistaken belief probably stems from a failure to understand how an offset would be administered. If the Court finds that damages are due to be paid to Dominion and also orders that an offset be taken, the Judgment Fund would pay the amount of damages ordered to the NWF. Dominion's outstanding one-time fee obligation would be reduced by the amount paid. Rather than depriving the NWF of fees due and owing, this accounting mechanism would seek to ensure that the total amount due to the NWF is paid. The NWF will not be deprived of any funds that would otherwise be paid into it, and no funds from the NWF will be used to pay the judgment, contrary to Dominion's concerns.

Moreover, Dominion's contention with respect to the legality of recoupment of the one-time fee turns Alabama Power on its head. The court's concern in Alabama Power stemmed from the idea that DOE would use, in violation of the NWPA, the expenditures of monies from the NWF to pay for a particular utility's "interim storage costs." What Dominion seeks to do here is precisely what the Alabama Power court sought to prevent - to use monies that rightly belong in the NWF, i.e. the one-time fee, to fund its own "interim storage costs." This result cannot be the one contemplated by the Eleventh Circuit. Indeed, one of the specifically identified permissible sources of funds for the NWF include "actual payments of contract holders pursuant to those contracts." 42 U.S.C. § 10222(c)(1)-(3). The one-time fee amount is an actual payment made by

Dominion to DOE pursuant to the Standard Contract and would thus fall within the permissible source of funds for the NWF.

C. Dominion Is Not Entitled To Receive And Retain A Windfall Due To DOE'S Delay

In addition to the one-time fee itself, the Government is entitled to recover any potential benefit Dominion received by deferring its one-time fee payment. LaSalle Talman Bank v. United States, 317 F.3d 1363 (Fed. Cir. 2003). In LaSalle, 317 F.3d 1363, the Federal Circuit affirmed the general contract tenet that if a non-breaching party "makes an especially favorable substitute transaction, so that he sustains a smaller loss than might have been expected, his damages are reduced by the loss avoided as result of such transaction." Id. at 1371 (citation omitted). Applying this principle, the Federal Circuit allowed the Government to offset the plaintiff's damages award by the amount of the benefit that the plaintiff had realized by engaging in substitute transactions following the Government's breach. See id. In so doing, the appellate court expressly rejected the plaintiff's argument, also raised here by Dominion, that such an offset would improperly credit the breaching party with the profits that the non-breaching party was able to realize because of the breach. The Federal Circuit held that "when there is a direct relation, in time and subject matter, between the breach and the mitigating events, the damages are reduced accordingly." Id.

Dominion has been able to defer its one-time fee payment, and presumably, has obtained an economic benefit from this deferral. For example, Dominion presumably has had the ability to either use those monies that it would have paid to DOE for other purposes (to the extent such monies existed), or would have avoided having to borrow money to pay the one-time fee in 1998 or 2002. Further, to the extent that Dominion has been able to earn a greater rate of return on the

monies that it would have paid to DOE than the amount it would pay DOE for interest on the one-time fee, Dominion has actually gained a benefit between 1998 and the present that it would not have received had DOE begun acceptance of Dominion's spent fuel beginning in 1998.

Dominion's reliance on Hughes Communications Galaxy, Inc. v. United States, 38 Fed. Cl. 578 (1997), aff'd, 271 F.3d 1060 (Fed. Cir. 2001) in support of its assertion that any claim for a potential benefit would be "too remote" from the breach misses the point. In Hughes, which the Federal Circuit addressed in LaSalle, the Court determined that an offset to the Government was not appropriate in light of the Court's finding that the profits realized by the plaintiff's substitute transactions was not a direct consequence of the Government's breach. See LaSalle, 317 F.3d at 1372. In this case, we need discovery to determine what benefits (or profits) Dominion gained from retaining a substantial one-time fee, and whether these benefits are direct consequences of DOE's delay. Dominion's request that the Government be barred even from inquiring regarding possible benefits is premature.

Moreover, Dominion's contention that "unfairness" lends in favor of dismissing the Government's counterclaim must be rejected. In making this assertion, Dominion implies that it may not have been able to pay the one-time fee up front, and that it should not be penalized for this necessary deferral. Plf.'s Br. at 23. To the extent that Dominion was unable to pay the one-time fee prior to its first acceptance in 1998, then Dominion may not have been ready, willing, and able to perform under the Standard Contract. Under these circumstances, DOE would not currently be in breach. The general rule in a breach of contract case is that the complaining party must demonstrate that the breach caused him injury. Record Club of America, Inc. v. United Artists Records, Inc., 890 F.2d 1264, 1275 (2d Cir. 1989); accord Scholle v. Cuban-Venezuelan

Oil Voting Trust, 285 F.2d 318, 320 (2d Cir. 1960) ("The party wronged must show, however, that the breach caused his loss. To do this he must prove that he intended to and was able to perform when his performance was due"). In this regard, the plaintiff must show its performance or willingness to perform in compliance with the contract, its ability to perform at the time of the other party's breach,[12] or that the plaintiff has always been ready, willing, and able to perform the contract. 17B C.J.S. Contracts § 716 (2005) (footnotes omitted); see Moore v. Ford Motor Co., 901 F. Supp. 1293, 1299 (N.D. Ill. 1995) (under Illinois law, to seek specific performance of a contract or seek recovery of damages from the breach of a contract, plaintiff must establish that he has always been ready, willing, and able to perform the contract on his part). To the extent Dominion could not pay the contractually-mandated one-time fee for Millstone Unit One by 1998, or for Millstone Unit Two by 2002, then Dominion was not ready, willing, and able to meet its obligations under the Standard Contract. This case should proceed to discovery, so the parties can determine the facts associated with this claim.

---

[12] In a partial breach case like this one, a new partial breach occurs each time that DOE fails to accept Dominion's SNF, see Restatement (Second) of Judgments § 26 cmt. g, at 241 (1982); 28 Am. Jur. 2d Damages § 488, and Dominion must be ready to perform each time a new partial breach occurs.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny Plaintiffs' Motion To Dismiss And/Or Strike Defendant's Counterclaims And Defenses Based Upon The "One-Time Fee."

Respectfully submitted,

PETER D. KEISLER

Assistant Attorney General
JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Lisa L. Donahue
LISA L. DONAHUE
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0365
Fax: (202) 307-2503

April 11, 2007

Attorneys for Defendant