No. 04-0083C
Senior Judge Bruggink

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

DOMINION RESOURCES, INC.,

and

DOMINION NUCLEAR CONNECTICUT, INC.

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

---

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS AND DEFENSES BASED UPON THE "ONE-TIME FEE"

---

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
DOMINION RESOURCES, INC. and
DOMINION NUCLEAR CONNECTICUT, INC.

April 30, 2007

# TABLE OF CONTENTS

**Page**

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS AND DEFENSES BASED UPON THE "ONE-TIME FEE" .......... 1

DISCUSSION .......... 3

1. The One-Time Fee is Not "Presently Due and Owing." .......... 3
2. The Government's "Condition Precedent" Arguments Are Unavailing In These Circumstances .......... 4
3. The Government Is Not Entitled To Any Offset or Recoupment From A Damage Award In Connection With A One-Time Fee That Is Not Yet Due .......... 7
   - A. General offset and recoupment cases are inapplicable here. .......... 7
   - B. *Alabama Power* also bars the recoupment sought by the government. .......... 8
   - C. The principles embodied in *Hughes Communications* bar the government's recoupment and alleged benefit-conferred arguments. .......... 9

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Alabama Power Co. v. United States*, 307 F.3d 1300 (11th Cir 2002)....................9

*Charron v. United States*, 200 F.3d 785 (Fed. Cir. 1999).......................................5

*Conley v. Pitney Bowes*, 34 F.3d 714 (8th Cir. 1994)............................................5

*Consumers Energy Company v. United Stat*es, 65 Fed. Cl. 364 (2005).............4, 5

*Favell v. United States*, 16 Cl. Ct. 700, 712 (1989)................................................5

*Hughes Communications Galaxy, Inc. v. United States*, 38 Fed. Cl. 478 (1997)..........................................................................................................10

*Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005)..........................................................................................................11

*Indiana Michigan Power Co. v. United States*, 88 F.3d 1272 (D.C. Cir., 1996)............................................................................................................2

*LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363 (Fed. Cir. 2003)....................................................................................................10, 11

*Norman v. United States*, 56 Fed. Cl. 255 (2003).................................................10

*Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531 (1918)..........................................................................................................10

*System Fuels, Inc. v. United States*, 65 Fed. Cl. 163 (2005)...............................4, 6

*United States v. Schaeffer,* 319 F.2d 907 (9th Cir. 1963).......................................5

*Vermont Yankee Nuclear Power Corporation v. United States*, 73 Fed. Cl. 236 (2006)................................................................................................4, 6

*Weeks Dredging & Contracting, Inc. v. United States*, 11 Cl. Ct. 37, 45 (1986)..........................................................................................................10

*Winstar v. United States*, 518 U.S. 839 (1996).......................................................3

*Yankee Atomic Electric Company v. United States*, 73 Fed. Cl. 249 (2006).......4, 8

## TABLE OF AUTHORITIES
## (continued)

Page

### FEDERAL STATUTES

Nuclear Waste Policy Act of 1982, as amended, 42. U.S.C. § 10222(c)(1)-(3)......8

### MISCELLANEOUS

*Restatement (Second) of Contracts* § 269.................................................................7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **DOMINION RESOURCES, INC.,**<br>and<br>**DOMINION NUCLEAR CONNECTICUT, INC.**<br>Plaintiffs,<br>v.<br>**UNITED STATES OF AMERICA,**<br>Defendant. | No. 04-0083C<br>Judge Bruggink |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS AND DEFENSES BASED UPON THE "ONE-TIME FEE"**

In its opposition to Dominion's motion to dismiss, the government never adequately addresses the fact that payment of the one-time fee is not due under the contracts until actual "first delivery" of spent nuclear fuel. Every judge that has looked at the issue has so ruled. That result is dictated by the plain language of the Standard Contracts and by common sense, and is not altered by the processing of some ultimately meaningless paperwork by DOE in the mid 1990's. Properly considered, this fact is dispositive of, and fatal to, all of the government's offset and failure-to-satisfy-condition defenses and counterclaims.

The government insists that it should be permitted to "proceed to discovery on the issue," but the whole point of Dominion's motion is that there are no legally sound one-time fee defenses or counterclaims upon which such discovery could be based. Parties do

not get to "proceed to discovery" on "issues" just because they want to or because it is a big case—they have to plead legally cognizable grounds for relief, and the government has failed to do so here.

In support of its position the government relies heavily upon the nature of this action as one for "partial breach," and repeatedly invokes the proposition that any judicial remedy should not confer alleged advantages upon Dominion, the non-breaching party. The best way to do that, of course, is to enforce the bargain originally struck, as much as this Court can. With regard to the one-time fee, that bargain was that Dominion would not be required to cause the one-time fee to be paid until actual "first delivery" in the real world was imminent, and would assume any risks (or benefits) of deferred payment until that first delivery. With its one-time fee defenses and counterclaims, however, the government seeks an impermissible alteration of that contractual bargain, because it seeks to accelerate Dominion's payment obligations prior to such actual "first delivery," either outright by claiming that the fee is presently due, or effectively through an alleged setoff against interim partial damages.

Before turning to the specific flaws in the particular arguments of the government, it is worthwhile to pause briefly to consider the almost breathtaking illogic of the government's position. Dominion has paid over $150 million to the DOE in connection with just the two contracts at issue (and the industry has paid billions more). In return for those payments, Dominion has received absolutely nothing. *Indiana Michigan Power Co. v. United States*, 88 F.3d 1272, 1276 (D.C. Cir. 1996) ("Here is air, give me money."). The courts have held that Dominion's only remedy is a damages action for partial breach of contract in this Court. Now, however, the government contends that,

before Dominion can even seek to recover any interim damages occasioned by DOE's failure, Dominion must pay *more* money to DOE—indeed, in excess of $275 million more. And, DOE is of course still nowhere close to performing. A dose of common sense is warranted here. No party can be presumed to have entered into such an irrational or one-sided bargain. *E.g., Winstar v. United States,* 518 U.S. 839, 863-64 (1996). The government's position must be rejected.

## DISCUSSION

### 1. The One-Time Fee is Not "Presently Due and Owing."

The relevant portion of Article VIII.B.(2)(b) provides that the one-time fee for the deferred Option 2 "shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule." The government repeatedly highlights only the language after the comma, ignores the first clause, and argues at pages 15-19 of its opposition that DOE's subsequently-abandoned "approval" of some delivery commitment schedules for Millstone 1 in the mid 1990's renders the one-time fee presently due and owing for purposes of this damages action. The decisions on this point are unanimously to the contrary, and the government's arguments do not withstand scrutiny.

Before the one-time fee can be said to have been due under the contracts, two things have to have happened. First, there must be an actual, real-world "first delivery" of spent fuel to DOE. Second, that delivery cannot be some sort of *ad hoc* or extra-contractual delivery (for example for research purposes or the like), but must be pursuant to *bona fide* functioning contractual performance by DOE, and therefore "as reflected in the DOE approved delivery commitment schedule." If those two things were to occur,

and Dominion did not cause payment to be made "prior to the first delivery," then—and only then—would the contracts be violated.[1]

Those two things, however, have of course not occurred. By wholly ignoring the "first delivery" term, it is the government—not Dominion—that impermissibly reads a portion of the contract as meaningless. Moreover, even with respect to the "approved delivery commitment schedule," DOE's abandonment of that process and its continuing performance failures have made it impossible for a utility to have a valid, approved delivery commitment schedule. *E.g.*, *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 174 (2005). As the Court held in *Vermont Yankee Nuclear Power Corp. v. United States*, 73 Fed. Cl. 236, 244 (2006), the utility plaintiff's "obligation to pay the one-time fee is not to be accelerated on account of a once-valid DCS being superceded or invalidated." *See also id.* at 244 n.9 ("[Plaintiff] bargained for the disposal of SNF, not the privilege of negotiating a DCS with the government.").

For all of these reasons, every judge that has addressed this contract language has ruled that the one-time fee is not presently due. *Vermont Yankee*, 73 Fed. Cl. at 244; *Yankee Atomic Electric Co. v. United States*, 73 Fed. Cl. 249, 325 (2006); *System Fuels*, 65 Fed. Cl. at 174; *Consumers Energy Co. v. United States*, 65 Fed. Cl. 364, 369-370 (2005). Those rulings are eminently correct.

2. The Government's "Condition Precedent" Arguments <u>Are Unavailing In These Circumstances</u>

With respect to the government's "condition precedent" arguments, we explained in our motion that the analysis regarding this issue in *Consumers Energy* was correct. In

[1] Dominion does not contend, as the government claims at page 16-17 of its opposition, that payment is not due until "after" first delivery. Dominion acknowledges that payment must be made prior to delivery, but it may be made "anytime" prior to such delivery.

particular, the payment of the one-time fee was not a contractual "condition," the failure of which would excuse the other party's performance, as that term has been defined by the Federal Circuit. *See* 1/29/07 Br. at 11-12; *Consumers Energy,* 65 Fed. Cl. at 372; *see also Charron v. United States*, 200 F.3d 785, 790-91 (Fed. Cir. 1999), *citing United States v. Schaeffer,* 319 F.2d 907, 911 (9th Cir. 1963); *Favell v. United States*, 16 Cl. Ct. 700, 712 (1989). In response, the government, primarily relying upon *Conley v. Pitney Bowes*, 34 F.3d 714 (8th Cir. 1994), argues at pages 6-10 of its opposition that where a contract provides that an obligation of one party is to precede the other's in time, the former obligation is always a "condition precedent," merely because of the temporal relationship. That, however, misstates the rule and the import of authorities like *Conley*, which find "constructive conditions" only where performance of one obligation must "necessarily" precede the other. In *Conley*, it was a requirement to provide notice of appeal procedures that triggered, and therefore necessarily had to precede, an exhaustion requirement. Here, a utility's payment of (even more) money to DOE's over-funded Nuclear Waste Fund does not have the same logical relationship to DOE's acceptance obligations as the obligations in *Conley*—it is at least possible for acceptance to happen without additional payments occurring. And, the government does not adequately account for the legal presumption against the finding of contractual "conditions," *see* 1/29/07 Br. at 12 and authorities cited therein, nor the unmistakeability with which such "conditions" must be expressed in the language of the contract.

In any event, however, the Court need not delve deeply into the theoretical distinctions between contractual conditions and promises in this case, because "the distinction is immaterial. Assuming, *arguendo,* that payment is a condition, the Court

finds that the one-time fee is not yet due, and that DOE has in any event excused the condition." *Vermont Yankee*, 73 Fed. Cl. at 244; *see also System Fuels*, 65 Fed. Cl. at 174. As noted above, the one-time fee is clearly not yet due, and that fact fully and completely disposes of the matter.

The reasoning of *System Fuels* and *Vermont Yankee* regarding this issue is persuasive. The government's efforts to distinguish *System Fuels*—it ignores *Vermont Yankee* on this point—at pages 10-14 of its opposition are not. First, nothing about a "partial breach" claim means that the government has not excused any alleged one-time fee condition. The Court in *System Fuels* acknowledged all of the "partial breach" assertions repeated by the government at pages 10-12 of its opposition, 65 Fed. Cl. at 173, and those assertions are no more compelling here. Dominion acknowledges that contractual duties remain and that it will have a duty to cause payment of the one-time fee to be made if the fee ever becomes due under the contracts, but that has not happened.

Second, there is nothing about the *System Fuels* holding that one-time fee obligations were excused which turned upon any "anticipatory partial breach" argument, and Dominion certainly does not "in essence" make such a claim, as the government contends at page 12 of its opposition. Accordingly, the government is misdirected when it asserts at page 14 of its opposition that *System Fuels* is somehow suspect because it predated the Federal Circuit's observation in *Indiana Michigan* that spent fuel cases do not involve anticipatory partial breach. Moreover, *Vermont Yankee*, which came long after *Indiana Michigan*, reached the same conclusion as *System Fuels*, but, as noted, the government simply ignores *Vermont Yankee*.

Third, it was not the Court in *System Fuels* that misconstrued the *Restatement (Second) of Contracts* § 269—it is the government's arguments regarding the Restatement provisions at page 14 of its opposition that are muddled. The government cites to the comment to Section 269 of the *Restatement (Second) of Contracts* noting that the provision applies to the party "adversely affected by the impracticability or frustration." But that party is, of course, Dominion. *System Fuels* so held, correctly.[2]

Finally with regard to "condition precedent," common sense also dictates the correct result. The notion that Dominion should presently be required to pay more than $275 million more dollars to DOE, with no realistic prospect of DOE performance even on the horizon, in exchange merely for the right to pursue interim partial damages, is just untenable. The government's condition precedent arguments will not bear the weight the government attempts to ascribe to them.

3. The Government Is Not Entitled To Any Offset or Recoupment From A Damage Award In Connection With A One-Time Fee That Is Not Yet Due

A. *General offset and recoupment cases are inapplicable here.* All of the common law offset and recoupment cases cited by the government at pages 20-23 of its opposition involve circumstances where there was, at least in some sense, a debt presently due and owing to the government. Indeed, the government itself acknowledges that offset principles apply when there are "debts owed to it." 4/11/07 Opp. at 21. In our original motion at pages 14-15, we explained the consequent inapplicability of such

[2] *System Fuels*, 65 Fed. Cl. at 174 ("In these circumstances, the government's delay . . . has temporarily frustrated the purpose behind [plaintiff's] selection of the deferral option."). With regard to the other party (i.e. the one not adversely affected), the comment to Section 269 points to other provisions, which the government, however, does not cite. The government then invokes Section 243, but we do not understand that reliance, because Section 243 has nothing to do with conditions precedent or excuses of such conditions.

authorities, and challenged the government to come forward with any case allowing offset or recoupment where the debt was not yet owed pursuant to the applicable contracts. The government has not done so, nor has it even directly responded, except perhaps to the extent that it argues that the entire one-time fee is now "due and owing." As we explained in our original motion and above, that position is clearly wrong. For that reason, no offset or recoupment is appropriate here.

B. *Alabama Power also bars the recoupment sought by the government*. As we pointed out in our motion and as the Court held in *Yankee Atomic*, the government's position with respect to the one-time fee is "the precise situation condemned in *Alabama Power [Co. v. United States,* 307 F.3d 1300, 1311-1312 (11th Cir. 2002)]." *Yankee Atomic*, 73 Fed. Cl. at 324 n.74. As we predicted, *see* 1/29/07 Br. at 11, the government seeks to side-step this proposition by invocation of a made-up accounting gimmick. In particular, the government argues that the "Judgment Fund would pay the amount of damages ordered to the NWF." 4/11/07 Opp. at 25. That assertion, however, is unavailing. First, the government cites no regulation, statute, or other legal authority that would allow such purported "payment," and none exists. Indeed, as we pointed out in our motion, *see* 1/29/07 Br. at 11, the plain terms of the Nuclear Waste Policy Act (NWPA) prohibit such "payment." The NWPA identifies very specific sources of funds that may go into the Nuclear Waste Fund at 42 U.S.C. § 10222(c)(1)-(3), and those sources do not include transferred credits, or "payments," from the Judgment Fund. The government then tries to get around this fact by contending that the amounts that it argues (in one paragraph) that the "Judgment Fund would pay" are really (in the next paragraph) "actual payment[s] made by Dominion to DOE pursuant to the Standard Contract."

4/11/07 Opp. at 25-26. Well, with respect, any such "payments" implemented by the government would not be payments made by Dominion pursuant to the Standard Contract. They would be, in substance, unilaterally imposed government offsets "against the fees [a utility] would otherwise be required to pay into the NWF," to account for "interim storage costs incurred as a result of the Department's breach." *Alabama Power*, 307 F.3d at 1311-1312. That is impermissible. The government cannot by its linguistic contortions elude the controlling statutory bars to its offset position.[3]

Second, the government has not responded to our observation that, if it were to prevail here, no principled reason would exist to limit its "offset" defenses to unpaid one-time fee amounts. *See* 1/29/07 Br. at 11. Every operating utility pays millions of dollars every quarter to DOE, and, moreover, those fees are in fact due and owing under the contracts, as the government argues (incorrectly) the one-time fee is here. If the government were free to implement the sort of recoupment asserted in this case, there would be no legal basis for refusing to allow such recoupment to be extended to debts reflected by ongoing quarterly fees. The government would effectively insulate itself from ever having to pay out a single dollar of real damages to any operating utility. Apparently, that is a bit much for the government, as it has not yet so argued. The absurdity of the proposition, however, underscores the incorrectness of the government's legal position.

C. *The principles embodied in Hughes Communications bar the government's recoupment and alleged benefit-conferred arguments.* Finally, in our opening brief we explained at length why the principles applied by the court in *Hughes*

[3] In addition, such an offset would effectively be an "adjustment" to the amount of the one-time fee, which is expressly prohibited by the Contracts. Article VIII.A.2, 4. *See* 1/29/07 Br at 17 n.7.

*Communications Galaxy, Inc. v. United States,* 38 Fed. Cl. 478, 582 (1997), *aff'd,* 271 F.3d 1060 (Fed. Cir. 2002) rendered the government's alleged benefit-conferred arguments and citations to cases like *Bluebonnet Savings Bank, F.S.B. v. United States,* 339 F.3d 1341 (Fed. Cir. 2003) unavailing in these circumstances. *See* 1/29/07 Br. at 19-25. The government does not adequately address *Hughes,* but merely contends that it "misses the point." 4/11/07 Opp. at 27. To the contrary, with regard to this issue, *Hughes Communications* is virtually on point. The government is incorrect in contending that there was a factual or evidentiary "finding" in *Hughes Communications* that the argued reduction in damages was not a direct result of the government's breach. Rather, on a motion in limine, and as a matter of law, the Court refused to allow the evidence of the argued offsets to be presented, and the Federal Circuit affirmed.[4] This was because of the very nature of the claimed government reductions. And, here, it is the very nature of the claimed government reductions, as pled in the one-time defenses and counterclaims, that requires dismissal of those defenses and counterclaims.

*LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363 (Fed. Cir. 2003), cited by the government at pages 26-27 of its opposition, is not to the contrary. Indeed, properly read, that case requires rejection of the government's position here. *LaSalle Talman Bank* cited and reaffirmed *Hughes Communications,* as well as the general rule "not to go beyond the first step" stated by Justice Holmes in *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531 (1918), upon which these issues turn. *LaSalle Talman Bank,* 317 F.3d at 1373. Argued benefits arising from transactions and

---

[4] It is well established that the standards for motions in limine involve legal determinations, "before trial," of relevance and admissibility of evidence. *E.g., Norman v. United States,* 56 Fed. Cl. 255, 267 (2003); *Weeks Dredging & Contracting, Inc. v. United States,* 11 Cl. Ct. 37, 45 (1986) (citation omitted).

investments not "directly related" to efforts to mitigate the government's breach in that *Winstar* case were held not to be properly considered in connection with damage calculations. 317 F.3d at 1373. As the court noted, "precedent distinguishes between remote consequences of contract breach, whether favorable or unfavorable to the non-breaching party, and those that are directly related to or direct consequences of the breach." *Id.* Reductions allowed in *LaSalle Tallman Bank* were specifically limited to those arising from a "substitute transaction." As the Federal Circuit has noted, however, no "substitute transaction" is, or would have been, possible here. *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1374 (Fed. Cir. 2005) ("[T]he NWPA provided that DOE was exclusively responsible for SNF collection and disposal in the United States, thereby prohibiting [plaintiff] or any other nuclear utility from seeking alternative disposal means."). Accordingly, the government's one-time defenses and counterclaims plainly do not involve a "substitute transaction." They are, for these purposes, like the collateral undertakings in *Hughes Communications* and the remote commercial activities in *LaSalle Talman Bank*, that the Federal Circuit has unequivocally held do not properly provide legal bases for damage reductions.

For all of the reasons we have explained, the government's "benefit conferred" arguments in support of offset claims and defenses should be rejected.

**CONCLUSION**

For the reasons stated in our motion and above, plaintiff respectfully requests dismissal of the following affirmative defenses and counterclaims: (1) failure to satisfy a condition precedent, Defendant's Answer ¶ 60; (2) recoupment or setoff, Defendant's Answer ¶ 62; (3) offset or reduction, Defendant's Answer ¶ 63; (4) defendant's "First Counterclaim," Defendant's Answer ¶¶ 64-67; and (5) defendant's "Counterclaim for Offset or Recoupment," Defendant's Answer ¶¶ 68-70.

s/ Brad Fagg

BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Attorneys for Plaintiffs

April 30, 2007

## CERTIFICATE OF FILING

I hereby certify that on this 30th day of April, 2007, a copy of the foregoing was filed electronically with the Court. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Paul Bessette