**No. 04-0083C**
**(Judge Bruggink)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DOMINION RESOURCES, INC. and,**
**DOMINION NUCLEAR CONNECTICUT, INC.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRE-ACQUISITION CLAIMS

---

**JEFFREY S. BUCHOLTZ**
**Acting Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**LISA L. DONAHUE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L Street, N.W.**
**Attn: Classification Unit**
**8th Floor**
**Washington, D.C. 20530**
**Tele: (202) 353-9498**
**Fax: (202) 307-2503**

**OF COUNSEL:**

**JANE K. TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**1000 Independence Avenue, S.W.**
**Washington, D.C. 20585**

**ANDREW AVERBACH**
**CHRISTOPHER J. CARNEY**
**SCOTT SLATER**
**Trial Attorneys**
**U.S. Department of Justice**

**March 17, 2008**

**Attorneys for Defendant**

# TABLE OF CONTENTS

PAGE

SUMMARY OF THE ARGUMENT . . . . . 1

FACTUAL BACKGROUND . . . . . 2

ARGUMENT . . . . . 6

I. STANDARD OF REVIEW . . . . . 6

II. DOMINION CANNOT RECOVER COSTS INCURRED BY MILLSTONE'S FORMER OWNERS PRIOR TO DOMINION'S ACQUISITION OF MILLSTONE. . . . . . 7

A. The PSA's Assignment Provision Does Not Confer Upon Dominion The Right To Recover The Former Millstone Owners' Pre-Aquisition Expenditures. . . . . . 7

1. A General Assignment Of A Continuing Contract Is Distinct From An Assignment Of A Pre-Acquisition Claim Under That Contract. . . . . . 7

2. The NWPA's Assignment Provision Did Not Abrogate The Assignment Of Claims Act, Which Precludes Dominion From Recovering Pre-Acquisition Expenditures By The Former Owners Of Millstone . . . . . 9

B. Congress Enacted The Assignment Of Claims Act To Prevent Recovery Of The Very Sort That Dominion Now Seeks . . . . . 14

C. Dominion Cannot Rely Upon The PSA's Limited Power Of Attorney Provision To Circumvent The Assignment Of Claims Act . . . . . 15

CONCLUSION . . . . . 17

# TABLE OF AUTHORITIES

CASES PAGES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . 6

Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
853 F.2d 1557 (Fed. Cir. 1988) . . . . . 6

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . 6

Dep't of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . 7, 11

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) . . . . . 7, 11

George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170 aff'd, 39 F.3d 1197 (Fed. Cir. 1993) . . . . . 14

Ginsberg v. Austin,
968 F.2d 1198 (Fed. Cir. 1992) . . . . . 11, 13

Kingsbury v. United States,
563 F.2d 1019 (Cl. Ct. 1977) . . . . . 14

Merritt v. United States,
267 U.S. 338 (1925) . . . . . 8

Patterson v. United States,
354 F.2d 327 (Cl. Ct. 1965) . . . . . 14

Putnam Mills Corp. v. United States,
479 F.2d 1334 (Ct. Cl. 1973) . . . . . 8

Rochester Gas and Electric Corporation v. United States,
65 Fed. Cl. 431 (2005) . . . . . 12-13

Roedler v. DOE,
255 F.3d 1347 (Fed. Cir. 2001) . . . . . 10

TABLE OF AUTHORITIES (cont'd)

CASES PAGES

Saladino v. United States,
62 Fed. Cl. 782 (2004) . . . . . 15

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . 6

Triton Group, Ltd. v. United States,
10 Cl. Ct. 128, 132-33 (1986) . . . . . passim

Tuftco Corp. v. U.S.,
614 F.2d 740 (Ct. Cl. 1980) . . . . . 8-9

United States v. Johnson Controls, Inc.,
713 F.2d 1541 (Fed. Cir. 1983) . . . . . 7

United States v. Testan,
424 U.S. 392 (1976) . . . . . 7

Vermont Yankee Nuclear Power Corp. v. United States,
73 Fed. Cl. 236 (2006) . . . . . 10, 12-13

FEDERAL STATUTES

28 U.S.C. § 1491 . . . . . 7

31 U.S.C. § 3727 . . . . . passim

41 U.S.C. § 15 (2008) . . . . . passim

42 U.S.C. §§ 10101-10270 . . . . . 1

42 U.S.C. § 10222 (2008) . . . . . 10-11

10 C.F.R. § 961.11 . . . . . 10, 16

TABLE OF AUTHORITIES (cont'd)

MISCELLANEOUS PAGES

R. Lord, 29 Williston on Contracts § 74:6 (4th ed. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DOMINION RESOURCES, INC. and DOMINION NUCLEAR CONNECTICUT, INC., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-0083C (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PRE-ACQUISITION CLAIMS

Defendant, the United States, respectfully requests that the Court grant partial summary judgment in its favor regarding the claims by plaintiffs, Dominion Resources, Inc. and Dominion Nuclear Connecticut, Inc. (collectively "Dominion"), for costs incurred by the wholly separate entities that previously owned the Millstone Power Station.

SUMMARY OF THE ARGUMENT

Dominion's claims for $12,066,611 in expenditures that other entities made, before Dominion ever acquired the Millstone Power Station ("Millstone"), is precisely the type of recovery that Congress sought to prevent through enacting the Assignment of Claims Act, 31 U.S.C. § 3727. The Act voids purported assignments against the Government of claims that former facility owners failed to pursue, or elected not to pursue, in court. Dominion's claims for costs predating its ownership of Millstone fall squarely within the Act's proscriptions. Further, neither the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270 ("NWPA"), nor the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract") authorize the assignment of pre-acquisition claims against the Government. The lack

of such a legislative exception to the Assignment of Claims Act demonstrates Congress's intent to adhere to traditional principles of privity of contract and sovereign immunity with regard to pre-acquisition claims accruing under the Standard Contract. As the Court is well aware, these principles dictate that an assignee cannot recover against the United States costs incurred by an assignor. Nor can Dominion circumvent the Anti-Assignment Act by relying upon the limited power of attorney provision in the Millstone Purchase and Sale Agreement ("PSA") because, by definition, a power of attorney constitutes an assignment, making this device subject to the Act.

## FACTUAL BACKGROUND

On or about March 31, 2001, Dominion acquired Millstone from the Connecticut Light and Power Company ("CL&P") and Western Massachusetts Electric Company ("WMECO"), subsidiaries of the Northeast Utilities Service Company ("Northeast Utilities"). PFUF ¶ 1.[1] Located in Waterford, Connecticut, Millstone consists of three nuclear reactors. Id. ¶ 3. The first of these, Unit 1, was permanently shutdown in July 1998, while Units 2 and 3 remain in operation. Id. The Unit 3 reactor commenced commercial use in 1986. Id. Since that time, Millstone's operators have discharged from the reactor to the Unit 3 spent fuel pool assemblies containing irradiated pellets of SNF. Id.

Although the Unit 3 pool is large compared to others in the industry, id. ¶ 4, Millstone's owners initially installed only 21 storage rack modules, knowing that future rack additions would be required as the plant discharged assemblies over time in order to refuel. Id. By the mid-1990s, Northeast Utilities and its subsidiaries had decided to add 14 racks to the pool. Id. ¶ 5.

---

[1] "PFUF" denotes Defendant's Proposed Findings of Uncontroverted Fact Regarding Pre-Acquisition Claim, filed concurrently herewith.

Over the course of the next several years, these entities conducted preliminary studies of the project, contracted for engineering analyses and design, prepared necessary safety evaluations as well as a license amendment to the Nuclear Regulatory Commission, supervised fabrication of a new rack, and oversaw the rack's installation. Id. Completed in 2000, prior to Dominion's acquisition of Millstone, Dominion had no involvement in the Unit 3 rack project, which was paid for by Northeast Utilities and/or its subsidiaries.[2] Id. ¶ 6.

Prior to the Millstone acquisition, the plant's former owners also undertook an "inter-unit transfer project." Id. ¶ 7. In order to increase the capacity of the Unit 2 spent fuel pool, the project contemplated transferring SNF from that pool to the one at Unit 3. Id. The project never made it beyond the study phase, and no SNF has ever been transferred between Units 2 and 3. Id.

Through the March 31, 2001 acquisition, CL&P and WMECO assigned Dominion their continuing rights in the 1983 Standard Contract relating to Millstone. Id. ¶ 8. With several exceptions not applicable to this motion, the parties' PSA confers upon Dominion "all rights of the Sellers under . . . the DOE Standard Contracts (including all rights to any claims of Sellers related to DOE defaults thereunder) . . . ."[3] Id. The PSA also purports to provide Dominion a limited power of attorney. Id. ¶ 10. In this action, Dominion broadly maintains that it "has authority to prosecute all claims against DOE in connection with the Standard Contracts for

---

[2] During discovery, witnesses sometimes used the terms "racking" and "re-racking" interchangeably to describe the addition of storage capacity to the Unit 3 pool. This work is most appropriately referred to as a "rack" project because of the nature of the installation performed. PFUF ¶ 5.

[3] Excluded from the assets conveyed to Dominion were (1) "any claims of CL&P and WMECO in connection with Pre-1983 Spent Nuclear Fuel . . . ."; (2) contractual rights under certain pre-acquisition contracts other than the Standard Contract; and (3) rights to payments under a "Transmission Support Agreement. PFUF ¶ 9.

Millstone Units 1, 2, and 3." Id. ¶ 12 (emphasis added). Among these claims are $11,769,950 paid by the former owners of Millstone for the installation of storage racks in the Unit 3 spent fuel pool, and $296,661 in costs incurred by these entities as a result of the inter-unit transfer project. Id. ¶ 13.

On September 7, 2007, we requested in writing that Dominion's counsel explain the basis for Dominion's prosecution of claims for costs incurred before its ownership of Millstone. Id. ¶ 14. We further asked that counsel inform us whether they represented the former owners of Millstone, whether and how these entities were to be bound by the results of this litigation, and, assuming some recovery on these pre-acquisition claims, which of the entities – Dominion or the former owners – were to receive the proceeds. Id.

On September 24, 2007, Dominion's counsel responded to our inquiry, referencing "the attorney-in-fact arrangement" set forth in the parties' PSA. Id. at ¶ 15. Counsel also stated that, "with respect to representation and party status, the government should consider the 'Northeast Entities' as being represented by Dominion's counsel, *i.e.*, Morgan Lewis, for purposes of the pending Millstone claims, including, for example, for purposes of any contacts with current or former employees of those entities relating to the Millstone claims, under applicable ethical guidelines." Id. However, counsel declined to explain how the former Millstone owners were to be bound by the outcome of this action or to clarify which of the entities was to receive the proceeds of any potential recovery of pre-acquisition costs. Id.

On July 30, 2007, we propounded upon Dominion a RCFC 30(b)(6) deposition notice encompassing subjects particular to the management of SNF and accounting for pre-acquisition costs at Millstone by its former owners. Id. ¶ 16. Notwithstanding Dominion's alleged

authorization to prosecute the former owners' claims, and the representation by Dominion's counsel that they also are its clients, Dominion produced for deposition not a single corporate representative of CL&P, WMECO, and/or Northeast Utilities. Instead, the individual proffered, Brian Wakeman, a Dominion engineer, could offer no testimony binding upon the former Millstone owners. Id. ¶ 17.

Moreover, Dominion produced Lou Nunez, Jr., to explain and verify the costs associated with spent fuel projects at Millstone as included in Dominion's claims. Id. ¶ 18. Yet, Mr. Nunez, a Dominion accountant, never worked for CL&P, WMECO, or Northeast Utilities, and he arrived at Millstone only after Dominion's acquisition of the plant. Id. As a result, Mr. Nunez had no contemporaneous role in accounting for the Unit 3 rack project or the inter-unit transfer project, no knowledge of whether Dominion's external auditor tested to determine if the pre-acquisition costs sought by Dominion are properly part of its claim, and virtually no ability to explain the former Millstone owners' accounting for these costs. Id.

In an attempt to remedy these discovery deficiencies, on September 12, 2007, we issued an amended RCFC 30(b)(6) deposition notice. Id. ¶ 19. This notice included an even more precise request for binding testimony concerning costs incurred by Millstone's former owners before Dominion's acquisition of Millstone. Id. In response, Dominion produced Wesley Jenkins, another Dominion accountant who also never worked for CL&P, WMECO, or Northeast Utilities. Id. ¶ 20. By his own admission, Mr. Jenkins was unfamiliar with the former owners' accounting system, with which he had no personal experience. Id. As a result, he was frequently forced to speculate or decline knowledge in response to inquiries concerning pre-acquisition costs now claimed by Dominion. Id. More significantly, Mr. Jenkins's testimony, like that of

Mr. Wakeman and Mr. Nunez, is not binding upon Millstone's former owners – entities that Dominion's counsel claims to represent in this case.

In its pre-trial brief, filed on February 8, 2008, Dominion retreated from its previous reliance upon the limited power of attorney provision in the Millstone PSA. Instead, Dominion now anchors its claim for pre-acquisition costs on the assignment clause appearing in the parties' PSA. Id. ¶ 21. Regardless of Dominion's shifting legal position, neither the PSA's limited power of attorney nor its assignment provision permit Dominion to recover monies spent by the former Millstone owners in adding rack modules to the Unit 3 spent fuel pool or exploring the possibility of inter-unit transfers of SNF before Dominion ever acquired Millstone and before it became a party to a contract with the Government.

## ARGUMENT

### I. STANDARD OF REVIEW

A salutary method of disposition designed to secure the just, speedy, and inexpensive determination of actions, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "Material" facts are those with the potential to significantly alter the outcome of the case. Anderson, 477 U.S. at 247-48. Absent the existence of enough evidence favoring the non-moving party for a jury to return a verdict on that party's behalf, there is no genuine issue of material fact for trial. Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557,

1560 (Fed. Cir. 1988) (citing Anderson, 477 U.S. at 249-50). In this case, the Government is entitled to partial summary judgment based upon the uncontroverted facts of record.

## II. DOMINION CANNOT RECOVER COSTS INCURRED BY MILLSTONE'S FORMER OWNERS PRIOR TO DOMINION'S ACQUISITION OF MILLSTONE

### A. The PSA's Assignment Provision Does Not Confer Upon Dominion The Right To Recover The Former Millstone Owners' Pre-Acquisition Expenditures

#### 1. A General Assignment Of A Continuing Contract Is Distinct From An Assignment Of A Pre-Acquisition Claim Under That Contract

Dominion cannot recover expenditures by the former owners of Millstone prior to their sale of the plant because, as promulgated under the NWPA, the Standard Contract does not provide for the assignment of pre-acquisition claims which, consistent with traditional principles of privity of contract and sovereign immunity, is prohibited under the Assignment of Claims Act. It is axiomatic that the United States, as sovereign, is immune from suit save as it consents to be sued. E.g., United States v. Testan, 424 U.S. 392, 399 (1976). Moreover, the scope of any waiver of sovereign immunity must be "unequivocally expressed" in statutory text, and "strictly construed" in favor of the United States. Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). Under the Tucker Act, 28 U.S.C. § 1491, the United States has consented to suit upon contract claims only by those who enjoy privity of contract with the Government. Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1557 (Fed. Cir. 1983); Triton Group, Ltd. v. United States, 10 Cl. Ct. 128, 132-33 (1986). As a result, only those parties who have actually entered into contract with the United States may maintain in this Court an action founded upon that contract. E.g.,

Merritt v. United States, 267 U.S. 338, 340 (1925); Erickson Air, 731 F.2d at 813; Putnam Mills Corp. v. United States, 479 F.2d 1334, 1337 (Ct. Cl. 1973); Triton, 10 Cl. Ct. at 132-33.

Consistent with the principles of sovereign immunity and privity of contract, two statutes restrict the manner in which private entities may voluntarily assign contracts with and claims against the Government. Often referred to collectively as the "Anti-Assignment Acts," these enactments are at 41 U.S.C. § 15 and 31 U.S.C. § 3727. See Tuftco Corp. v. U.S., 614 F.2d 740, 744 (Ct. Cl. 1980). The first statute, known individually as the Assignment of Contracts Act, 41 U.S.C. § 15, provides in relevant part:

> No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned.

41 U.S.C. § 15(a) (2008). The Assignment of Contracts Act restricts the assignment of any interest in a contract with the United States to any other party.[4] Id. at § 15(b). Pursuant to this authority, not only is any purported assignment of a contract with the United States typically invalid, but it causes the annulment of the contract in regard to the sovereign. Id.

The second statute, known individually as the Assignment of Claims Act, 31 U.S.C. § 3727, applies more generally to "claims" against the United States. The relevant portion of the statute restricts the assignment of such claims outside of the following procedure:

> An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The

---

[4] The Act does not apply to assignments to a bank, trust company, or financing institution of contractual payments aggregating $1,000 or more. 41 U.S.C. § 15(b).

> person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

31 U.S.C. § 3727(b) (2007). Under this statute, assignments of claims against the Government are generally void unless they comply with the enumerated restrictions. Id. By the terms of the Assignment of Claims Act, claims "for work already done" are precluded from assignment. Tuftco, 614 F.2d at 744.

Had Congress intended the courts to treat assignments of continuing contracts with the Government and assignments of previously incurred contractual claims against the Government alike, it could have done so through a single statute. The legislature took the opposite approach, enacting separate statutes governing these very different types of assignments. Thus, although 42 U.S.C. § 15 and 31 U.S.C. § 3727 embody similar principles – together barring assignments to third parties of legal rights against the Government – the acts are distinct. Tuftco, 614 F.2d at 744. The Assignment of Contracts Act invalidates purported assignments of executory or "continuing" contracts with the United States. Id. By contrast, the Assignment of Claims Act operates to void assignments of specific claims for work that was previously completed. Id.

2. The NWPA's Assignment Provision Did Not Abrogate The Assignment Of Claims Act, Which Precludes Dominion From Recovering Pre-Acquisition Expenditures By The Former Owners Of Millstone

In 1983, Congress enacted the NWPA, which authorized the United States Department of Energy ("DOE") "to enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel[]" in exchange for the

payment of fees. 42 U.S.C. § 10222(a)(1) (2008 West). Further, the Act provides that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved."[5] Id. § 10222(b)(3). Thus, in order to facilitate transfers of ownership among and between nuclear utilities, Congress, through legislative fiat, effectively superseded the Assignment of Contracts Act with regard to the conveyance of continuing "rights and duties" under the Standard Contract, an executory agreement. Id.; see Vermont Yankee Nuclear Power Corp. v. United States, 73 Fed. Cl. 236, 239 (2006) ("The provisions of the NWPA and of the Standard Contract, Article XIV, contemplate that ownership of nuclear power facilities occasionally will change hands . . . ."); Roedler v. DOE, 255 F.3d 1347, 1352 (Fed. Cir. 2001) (construing Standard Contract and instructing that, "[for] determination of contractual and beneficial intent when, as here, the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose").

However, in enacting the NWPA and promulgating the Standard Contract, the Government did not assent to the assignment of past claims – that is, those arising prior to the transfer of a nuclear plant's ownership. Neither the statute nor the contract contain a provision waiving the Government's sovereign immunity for claims stemming from work already accomplished as necessary to overcome the Assignment of Claims Act. In fact, the word "claim" does not appear in any of the relevant statutory or contractual text, and these authorities do not reference or provide for the conveyance of pre-acquisition claims. Moreover, the United States

[5] The assignment provision in the Standard Contract is consistent with that set forth in the NWPA, stating "[t]he rights and duties of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved . . . ." 10 C.F.R. § 961.11, Art. XIV.

Court of Appeals for the Federal Circuit has recognized that "the assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract . . . ." Ginsberg v. Austin, 968 F.2d 1198, 1201 (Fed. Cir. 1992) (emphasis added); see also R. Lord, 29 Williston on Contracts § 74:6 (4th ed. 2003) ("The assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of contract, though it transfers a right to all payments becoming due in the future, even for work done prior to the assignment."). Here, the NWPA only provides for the assignment of the "rights and duties of a party to a contract," 42 U.S.C. § 10222(b)(3), not the "rights of action for previous breaches" under the contract. Without more than its general reference to common law, the assignment provision of the NWPA should not be interpreted to eliminate the more specific prohibition on such assignments set forth in the Assignment of Claims Act.

The conclusion that the Standard Contract's assignment provision does not encompass the assignment of pre-acquisition damages is consistent with Congress's intent to treat separately the assignment of continuing contracts, like the Standard Contract, and the assignment of past claims for work already done, like Dominion's pre-acquisition claims. See 41 U.S.C. § 15; 31 U.S.C. § 3727. It also comports with traditional privity of contract principles, whereby the United States is immune from contract claims asserted by those who were not in privity with the Government when the claims arose. See, e.g., Erickson Air, 731 F.2d at 813. Finally, were there any doubt that the Assignment of Claims Act prohibits a nuclear utility from assigning to a purchaser claims for pre-acquisition costs incurred as a result of the Government's partial breach of the Standard Contract, such doubt would counsel against a waiver of the Government's sovereign immunity. Blue Fox, 525 U.S. at 261 (recognizing that scope of any waiver of

sovereign immunity must be "unequivocally expressed" in statutory text and "strictly construed" in favor of the United States).

In the present case, the PSA between CL&P, WMECO, and Dominion generally purports to convey to Dominion "all rights of the Sellers under . . . the DOE Standard Contracts (including all rights to any claims of Sellers related to DOE defaults thereunder) . . . ." PFUF ¶ 8. As discussed, through the NWPA and Article XIV of the Standard Contract, the Government only waived its sovereign immunity with regard to Dominion for damages claims arising after its acquisition of Millstone. The Government has not assented to suit by Dominion on claims for pre-acquisition costs for work previously completed as necessary to overcome the Assignment of Claims Act. Hence, as a matter of law, Dominion cannot recover the $11,769,950 in rack costs, or the $296,661 in inter-unit transfer project expenditures, paid by the former Millstone owners before Dominion ever entered into privity of contract with the Government.

This Court's prior rulings do not affect this result. In two factually similar cases, Rochester Gas and Electric Corporation v. United States, 65 Fed. Cl. 431 (2005), and Vermont Yankee Nuclear Power Corporation v. United States, 73 Fed. Cl. 236 (2006), the Government presented broad challenges to the plaintiffs' assignments of Standard Contract rights to acquiring entities. In Rochester Gas, the Government opposed the plaintiff's motion to substitute the buyer as plaintiff in the case, 65 Fed. Cl. at 433, whereas, in Vermont Yankee, the Government moved for summary judgment on the plaintiffs' entire cause of action. 73 Fed. Cl. at 237. In each case, the Government contended principally that the NWPA does not permit the "partial assignment" of rights under the Standard Contract. Rochester Gas, 65 Fed. Cl. at 433; Vermont Yankee, 73 Fed. Cl. at 237. Specifically at issue were the sellers' attempts to retain rights relating to the

payment of the one-time fee as required under the Standard Contract. Rochester Gas, 65 Fed. Cl. at 433; Vermont Yankee, 73 Fed. Cl. at 237. No such issue is present in this case. Thus, the scope and substance of the Government's opposition in Rochester Gas and Vermont Yankee was vastly broader and significantly different than here, making these cases readily distinguishable.

Nonetheless, the Court in Rochester Gas and Vermont Yankee proceeded to address the sellers' efforts to assign their plants' buyers certain "pre-existing," or pre-acquisition, claims. Reasoning that the NWPA's assignment provision refers generally to "rights and duties" under the Standard Contract, and that "one of the 'rights' that a party has in a contract with the government is to bring suit for breach of contract[,]" the Court in Rochester Gas concluded that the NWPA does not bar the assignment of pre-acquisition claims. 65 Fed. Cl. at 440-41. Citing Rochester Gas, the Court adopted this reasoning without further analysis in Vermont Yankee. 73 Fed. Cl. at 241. We respectfully disagree with the Court's analysis because it fails to recognize that the assignment of continuing rights under an executory contract with the Government does not also constitute an assignment of rights for previous breaches. See Ginsberg, 968 F.2d at 1201. Indeed, the Court's approach in these cases conflates the Assignment of Contracts Act and the Assignment of Claims Act. See supra Parts A.1, 2. Additionally, the Court failed properly to account for the requirement that a party be in privity with the Government to sue upon a contract claim, and the rule that waivers of sovereign immunity must be expressed unequivocally. See id. at Part A.1. Therefore, Dominion's reliance upon Rochester Gas and Vermont Yankee in its pre-trial brief is misplaced. P's Mem. of Fact and Law 54.

B. Congress Enacted The Assignment Of Claims Act To Prevent Recovery Of The Very Sort That Dominion Now Seeks

Dominion's claim for costs incurred by wholly separate entities before Dominion ever contracted with the Government is precisely the type of recovery that Congress sought to prevent by enacting the Assignment of Claims Act. Among the Act's several purposes are (1) preventing multiple payments of a single claim by the United States; (2) avoiding involvement by the Government in litigation as to the existence or extent of subrogation or other such claims between third parties; and (3) preserving for the Government defenses and counterclaims that might not be available against an assignee. E.g., Kingsbury v. United States, 563 F.2d 1019, 1024 (Cl. Ct. 1977); Patterson v. United States, 354 F.2d 327, 329 (Cl. Ct. 1965). Additionally, a principal purpose of the Assignment of Claims Act is to insure that contract claims are brought by original claimants so as to permit the Government adequately to defend itself. E.g., George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 173, aff'd, 39 F.3d 1197 (Fed. Cir. 1993).

As discovery in this case revealed, Dominion's alleged prosecution of the Millstone Unit 3 rack claim and the inter-unit transfer project "on behalf of" CL&P, WMECO, and Northeast Utilities is illusory. Millstone's former owners are not parties to this action. PFUF ¶ 2. Despite counsel's statement that "the government should consider the 'Northeast Entities' as being represented by Dominion's counsel, *i.e.*, Morgan Lewis," in response to the Government's RCFC 30(b)(6) deposition notices counsel failed to produce a single corporate representative capable of offering testimony binding CL&P, WMECO, and/or Northeast Utilities to the results of this litigation. Id. at ¶¶ 15, 17-20. As a result, the Government has been deprived of discovery from the original claimants, which may have assisted in the Government's defense. Further, while it is

our position that any suit by the former owners of Millstone for pre-acquisition damages at the plant would be time-barred, that does not mean that the Government is immune from the risk that these entities may yet file suit and challenge our position. Nor does it eliminate the likelihood that the Government may become embroiled in litigation between Dominion and Millstone's former owners as to subrogation or other such issues. Accordingly, Dominion's pursuit of pre-acquisition claims contravenes Congressional intent with regard to the Assignment of Claims Act.

### C. Dominion Cannot Rely Upon The PSA's Limited Power Of Attorney Provision To Circumvent The Assignment Of Claims Act

Dominion cannot, through the limited "power of attorney" in the Millstone PSA, recover upon claims otherwise barred by the Assignment of Claims Act because powers of attorney constitute assignments, which are subject to the Act's proscriptions. The Assignment of Claims Act defines the term "assignment" to mean "the authorization to receive payment for any part of [a] claim." 31 U.S.C. § 3727(a)(2). Powers of attorney necessarily constitute authorizations to receive payments of amounts that might be recovered on claims, and, as such, these authorizations are within the purview of the Act. Id.; Triton, 10 Cl. Ct. at 133; see Saladino v. United States, 62 Fed. Cl. 782, 793 (2004) (finding claimant's attempt to exercise power of attorney against Government invalid by operation of Assignment of Claims Act).

In Triton Group, Ltd. v. United States, 10 Cl. Ct. 128 (1986), the United States Claims Court granted the Government's motion for summary judgment on claims brought by a successor-in-interest to a Federal lease contract for costs allegedly incurred by various other entities with who had earlier contracted with the Government. In prosecuting these claims, the

subsequent entity, Triton Group, Ltd. ("Triton"), attempted to rely upon a contractual power of attorney clause that stated, "you and any attorneys of your designation are hereby authorized to take complete charge of the preparation, settlement, collection and distribution of the GSA claim . . . ." Triton, 10 Cl. Ct. at 131. In considering this provision, the Court first noted that it lacked jurisdiction to adjudicate Triton's claims because Triton was not in privity with the Government as to the contract forming the basis for the action at the time that the former contract holders allegedly incurred damages. Id. at 132-33. Next, the Court concluded that Triton's power of attorney was subject to the Assignment of Claims Act and that the device failed to meet the Act's basic requirements. Id. Accordingly, the Court held that the power of attorney was invalid as against the Government. Id.

As in Triton, the parties' PSA purports to provide Dominion a limited power of attorney to represent CL&P and WMECO in "all matters involving the Pre-1983 Spent Nuclear Fuel . . . ."[6] PFUF ¶ 10. However, Dominion lacked privity of contract with the Government during the period in which these entities undertook the inter-unit transfer project at Millstone, and when they completed the Unit 3 rack project. Id. ¶¶ 5-7. As a result, the Government never waived its sovereign immunity with regard to suit by Dominion for such costs. See Triton, 10 Cl. Ct. at 132-33; Erickson Air, 731 F.2d at 813. Moreover, the power of attorney provision in the Millstone PSA constitutes an assignment, rendering it subject to the Assignment of Claims Act. See 31 U.S.C. § 3727(a)(2); Triton, 10 Cl. Ct. at 133. As discussed, the Act invalidates any

---

[6] The Standard Contract provides for the payment to DOE of a "one-time fee" for disposal of pre-April 7, 1983 SNF. 10 C.F.R. § 961.11, Art. VIII.A.2.

purported assignment to Dominion of pre-acquisition claims by the former owners of Millstone.[7] See supra Parts A.1, 2.

## CONCLUSION

For the foregoing reasons, the Government requests that the Court grant partial summary judgment in the Government's favor on Dominion's claim for $11,769,950 in pre-acquisition costs stemming from the addition of storage racks to the Millstone Unit 3 spent fuel pool and $296,661 in pre-acquisition costs associated with the inter-unit transfer project.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

[7] Even if a party could circumvent the Assignment of Claims Act's proscriptions through a power of attorney, the provision appearing in the PSA would still be ineffective with regard to the Unit 3 rack claim as the provision encompasses only pre-1983 SNF, and the Millstone Unit 3 spent fuel pool contains no pre-1983 SNF. PFUF ¶ 3.

s/Lisa L. Donahue by s/Scott Slater
LISA L. DONAHUE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 353-9498
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

ANDREW AVERBACH
CHRISTOPHER J. CARNEY
SCOTT SLATER
Trial Attorneys
U.S. Department of Justice

March 17, 2008

CERTIFICATE OF FILING

I hereby certify that on this 17th day of March 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PRE-ACQUISITION CLAIMS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Scott Slater