IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| DOMINION RESOURCES, INC., and<br>DOMINION NUCLEAR CONNECTICUT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-0083<br>(Judge Bruggink) |

| | |
|---|---|
| DOMINION RESOURCES, INC., and<br>VIRGINIA ELECTRIC & POWER COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 04-0084<br>(Judge Bruggink) |

DEFENDANT'S SUPPLEMENTAL BRIEF

Pursuant to the Court's order dated August 8, 2008, defendant, the United States, respectfully submits the following supplemental brief.

BACKGROUND

On August 7, 2008, the Court of Appeals for the Federal Circuit issued decisions in Yankee Atomic Electric Co. v. United States, Nos. 2007-5025 - 5027, -5031 - 5033, slip op. (Fed. Cir. Aug. 7, 2008) ("Yankee"), Pacific Gas & Electric Co. v. United States, 2007-5046, slip op. (Fed. Cir. Aug. 7, 2008) ("PG&E"), and Sacramento Municipal Utility District v. United

States, 2007-5052, -5097, slip op. (Fed. Cir. Aug. 7, 2008) ("SMUD").[1] Although not final, the decisions of the Court of Appeals for the Federal Circuit confirm the plaintiffs' burden in this case to set forth a plausible non-breach scenario to prove that the damages that they seek were caused by DOE's delay in accepting spent nuclear fuel ("SNF"). This burden affects all damages claimed in this case, because without first meeting this burden, plaintiffs cannot prove that DOE's delay caused them to incur the costs that they claim, and plaintiffs cannot recover any of the damages that they seek.

The Federal Circuit's decisions also recognize that damages cannot be determined in these SNF cases without first making a legal determination as to the rate at which DOE was required to begin accepting SNF from the utility plaintiffs. Yankee, slip op. at 7. In its decisions, the Federal Circuit finds that the Court must look to the terms of the Standard Contract to determine DOE's legal obligations. Id. In so doing, the Federal Circuit categorically rejected the assertion that DOE was obligated to accept fuel at a rate that would preclude all at-reactor storage as argued by plaintiffs. Id. The Federal Circuit's decision in PG&E that the DOE's contractual obligation is defined by the 1987 Annual Capacity Report ("ACR") is not final, and the Government is in the process of evaluating how it intends to respond to that aspect, as well as others, of the Federal Circuit's decisions. Even in applying the 1987 ACR rate here, the Court should look to contemporaneous evidence in the trial record to inform its consideration of plaintiffs' SNF storage condition in the non-breach world.

---

[1] Another case, Nebraska Public Power District v. United States, No. 07-5083 (Fed. Cir. docketed March 15, 2007), remains pending on appeal. This appeal involves the issue of whether the Government may invoke the "Unavoidable Delays" clause of the Standard Contract, as discussed in our prior briefs.

## ARGUMENT

### I. PLAINTIFFS BEAR THE BURDEN OF ESTABLISHING CAUSATION

As the Government explained in its pre-trial and post-trial briefs in this matter, the fundamental goal in awarding expectation damages is to "place the injured party in as good a position as it would have been had the breaching party fully performed." Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005); Bluebonnet Savs. Bank, F.S.B. v. United States, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003). The Federal Circuit's most recent SNF decisions reinforce this basic concept, noting that plaintiffs bear the burden to prove causation. Yankee, slip op. at 6. In so doing, the Federal Circuit has rejected plaintiffs' contention that the Government bears the burden to disprove their "mitigation" damages. According to the Federal Circuit, plaintiffs "can only sustain their damages claim" if they establish causation, foreseeability and reasonable certainty through the mechanism of recreating a non-breach world. Yankee, slip op. at 6 (citing Indiana Michigan, 422 F.3d at 1373). Moreover the analysis as set forth in the Bluebonnet cases, and as described by the Government at closing argument, remains the standard by which damages should be evaluated in this case. Yankee, slip op. at 5-6 (noting that the substantial causal factor test is disfavored); SMUD, slip op. at 5 ("License to use the substantial causal factor, however, should not be mistaken for permission to ignore the burden of proof required under that test.").

## II. THE FEDERAL CIRCUIT'S DECISIONS MAKE APPARENT PLAINTIFFS' FAILURE TO MEET THEIR BURDEN OF PROOF

### A. Plaintiffs Have Failed To Establish Causation For Certain Elements That Are Unaffected By the Rate of Acceptance

Certain elements of plaintiffs' claim are unaffected by the Federal Circuit's determination of the rate of acceptance, but the Federal Circuit's reiteration that plaintiffs bear the burden of establishing a plausible non-breach scenario highlights their failure to meet that burden here.[2] With respect to the crane upgrades, Dominion Nuclear Connecticut ("DNC") has failed to establish that it would not have upgraded the Millstone cranes (or performed the load drop analyses that DNC admits would be necessary) absent the breach, nor has it established that DOE's delay caused it to upgrade the cranes. DNC's attempt to place the burden on the Government to prove that it would have upgraded its crane absent DOE's delay must be rejected. Similarly, plaintiffs have not established that they would not have performed modifications to support cask loading absent DOE's delay, nor have they properly established the costs that would have been associated with loading fuel to DOE in the non-breach world.[3]

Plaintiffs cannot recover their overhead costs, because they have not established that they experienced any increase in overhead cost attributable to DOE's delay. Any reliance upon the

[2] These elements include, among others, the costs associated with the following: the upgrade by DNC of its Unit Two and Three cranes at the Millstone facility, the modifications performed at Millstone and North Anna to support cask loading (including mobilization activities performed at Millstone), costs associated with loading fuel to DOE, the Millstone heat load analysis, overheads, the claim by VEPCO for unsupported internal labor, any unsupported costs in plaintiffs' claim, AFUDC and the Millstone pre-acquisition costs.

[3] If this Court determines that Dominion has met its burden with respect to internal labor costs, those costs should be included in any adjustment taken for the costs that Dominion would have incurred to load fuel to DOE. DX 303 at pp. 6-7, n. 30. Mr. Johnson is available to perform any additional calculations that the Court requires.

Federal Circuit's decision in SMUD concerning internal labor costs to support recovery of overhead costs is misplaced. The Federal Circuit's non-precedential decision permitting SMUD to recover its internal labor costs does not obviate the plaintiffs' burden to prove causation as to overhead costs. Even where internal labor costs are recoverable, plaintiffs can only recover where they can prove (1) the use of their own employees and (2) the number of hours those employees spent on breach-related projects. SMUD, slip op. at 11. "Upon meeting these requirements, [plaintiffs are] entitled to recover only those costs arising from the time spent on mitigation efforts." Id. (emphasis added). Here, plaintiffs have been unable to prove any increase in overhead costs attributable to DOE's breach, and in fact admitted at trial that many of their overhead costs are fixed. Jenkins, Tr. 1082:24-1083:19.

Similarly, for the $5,166,607 in unsupported labor charges claimed by Virginia Electric & Power Company ("VEPCO"), VEPCO is unable to identify the name of the individual employee who performed the work, what specific tasks were being performed, how many employees were performing the work, or whether a particular employee spent all or some of his time working on a damage-related project. DX 252; Wakeman, Tr. 701:12-704:8. Without this information, VEPCO cannot meet the test as set forth in SMUD and cannot recover any of this amount in unsupported internal labor. Lastly, none of the other unsupported charges in plaintiffs' claim ($1,749,763) are recoverable, because plaintiffs failed to provide sufficient information about those charges to sustain their burden of proof. Def.'s Post-trial Br. at 48-50.

B. Even At the 1987 ACR Rate, VEPCO Has Not Established That The DOE's Delay Caused It To Construct Additional Spent Fuel Storage At North Anna

To meet its burden of proving that DOE's delay caused VEPCO to construct additional SNF storage at North Anna, VEPCO must provide "record evidence" of its SNF storage

condition at the contractually obligated rate of acceptance, so this Court can "perform the necessary comparison between the breach and non-breach worlds." Yankee, slip op. at 7 (emphasis added). Because the Court must compare the costs incurred in the actual world to the costs that would have been incurred in the non-breach world, VEPCO cannot rely solely on its assertion that DOE would have performed at a rate that would have precluded all additional at-reactor storage. Id. at 8-9. Instead, VEPCO must show what storage options it would have chosen absent DOE's delay at the specific rate of acceptance mandated by the Standard Contract. Id. at 6-7.

VEPCO's modeling of its SNF storage needs at the 1987 ACR rate fails to take into account contemporaneous evidence that would have informed VEPCO's spent fuel planning, and therefore fails to set forth a plausible non-breach scenario. Plaintiffs' alternative causation model shows no loss of full core reserve ("FCR") for two reasons: (1) plaintiffs assume that VEPCO would plan to use all of its Surry allocations at North Anna, and (2) plaintiffs assume that VEPCO would have needed to load more casks into dry storage at Surry at the 1987 rate than at the 2004 rate in order to maintain FCR at Surry. PX 223.

Plaintiffs' first assumption, that VEPCO would have planned to use all of Surry's early year allocations at the North Anna facility to maintain FCR, is contrary to contemporaneous documentation. The evidence shows that VEPCO would not have planned to use all of its Surry allocations at North Anna, because of concerns about intervention from the residents of Surry county. Def.'s Post-trial Br. at 14-15. Such intervention could have resulted in "lengthy, costly litigation" (PX 37 at SN069625), and VEPCO's senior management undoubtedly would have considered such costs when planning for spent fuel storage at any rate of acceptance. At the 1987 ACR rate, like the 2004 rate, North Anna would not have received any spent fuel shipping

allocations until 2002. PX 56 at DOM00032010, DOM00032024; PX 191 at KRGNSP03654; PX 223 at DOM00095958. Had VEPCO not used all of Surry's allocations at North Anna in its model, North Anna would have suffered a sustained loss of FCR from 1998 through at least 2001. PX 223 at DOM 00095958. The most prudent option for Dominion under these planning circumstances would have been to construct additional spent fuel storage. Def.'s Post-trial Br. at 16. As VEPCO told the Commonwealth of Virginia in 2006, faced with no pickups at North Anna until 2002, VEPCO would have chosen to construct dry fuel storage at North Anna and would have loaded ten casks to that facility. DX 212 at DOM00013816. Therefore, even under the 1987 ACR rate, the Government's damage analysis with respect to the North Anna facility remains unchanged.

The second reason that VEPCO is able to maintain FCR at its Surry and North Anna facilities pursuant to the 1987 ACR model relates to the loading of casks at the Surry dry storage facility. Pursuant to plaintiffs' 1987 ACR model, VEPCO claims two fewer cask loadings at Surry than it claims would have been required at the 3000-MTU rate. PX223; PX222. Even if the Court were to determine that the North Anna ISFSI costs are damages attributable to DOE's delay pursuant to the 1987 ACR rate, the damages originally claimed by VEPCO for the North Anna dry storage facility and cask loadings at the Surry facility should be reduced by the cost of two cask loadings at the Surry facility, as reflected in PX 223 at DOM2-00000975.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Lisa L. Donahue
LISA L. DONAHUE
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-9498
Fax: (202) 307-2509

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Senior Trial Counsel

ANDREW P. AVERBACH
CHRISTOPHER J. CARNEY
SCOTT SLATER
Trial Attorneys
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

September 2, 2008

Attorneys for Defendant

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 2nd day of September, 2008, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Lisa L. Donahue